VEVE ET AL. *v.* THE FAJARDO SUGAR GROWERS' ASSOCIATION.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 720.—Resuelto en abril 22, 1912.

DESAHUCIO — VENCIMIENTO DE LA OBLIGACIÓN — OFRECIMIENTO ANTICIPADO DE PAGO—CONSIGNACIÓN.—Estipulada en una escritura de arrendamiento la forma del pago de los cánones por semestres antipasados, es eficaz en derecho el ofrecimiento de pago de un semestre de arrendamiento hecho con cuatro días de anticipación al del vencimiento de la obligación, por ser ese anticipo beneficioso al acreedor y no alegarse por éste perjuicio alguno.

ID.—OFRECIMIENTO DE PAGO HECHO A LA ESPOSA—BIENES PECULIARES DE LA ESPOSA.—El tribunal resolvió que el ofrecimiento de pago hecho a las respectivas esposas de los demandantes, se hizo a quien podía hacerse, teniendo en cuenta que ellas otorgaron el contrato de arrendamiento de la finca en litigio de la cual eran condueñas, y en cuyo documento se estipuló que el

pago se haría a las condueñas, habiendo uno de los esposos demandantes, como apoderado de su esposa, intervenido en el citado contrato de arrendamiento; siendo además el cobro de los cánones de arrendamiento un acto de administración, y, según el artículo 160 del Código Civil, cada uno de los cónyuges tiene la libre disposición y administración de sus bienes propios.

Id.—Ofrecimiento de Pago—Documentos de Depósito—Estoppel—Aceptación.—Se resolvió en apelación que el ofrecimiento del pago del arrendamiento en documentos de depósito no infringía el artículo 1138 del Código Civil, pues las demandantes, que no estaban en la obligación de aceptar el pago del semestre de arrendamiento en documentos de depósito, no los rechazaron en absoluto sino que los devolvieron por observar en los mismos notable error que debía ser rectificado, con lo cual manifestaron su própósito de aceptarlos, siempre que se hiciera la rectificación.

Id.—Consignación—Documentos de Depósito—Sustitución por Dinero.—No queda sin efecto una consignación por el hecho de ser retirados los documentos de depósito después de haber sido admitidos por la corte para ser sustituídos por los mismos valores que representaban, pues esa sustitución no podía hacer que quedara subsistente la obligación de pagar del arrendatario.

Id.—Consignación—Ofrecimiento de Pago—Requerimiento.—Los preceptos legales que regulan el ofrecimiento del pago y la consignación no exigen que las operaciones de ofrecimiento de pago, de requerimiento y consignación se verifiquen en momentos sucesivos de un mismo día, pues la consignación hecha en forma legal cuando el ofrecimiento de pago se hizo oportunamente, se retrotrae a la fecha de dicho ofrecimiento de pago, siempre que aquélla se hiciera dentro de un término prudencial.

Ofrecimiento de Pago—Día Feriado.—Habiendo sido el día 1°. de enero de 1911, domingo y el día 2 del mismo mes, día feriado por ministerio de la ley, el primer día hábil para hacer un pago fué el 3 de enero y por tanto el ofrecimiento de pago hecho en este día para satisfacer una obligación que vencía el primero de enero, tiene el mismo efecto que si se hubiera realizado el día 1°.

Id.—Construcción de Ramales de Ferrocarril—Causas de Desahucio—Uso de la Finca.—El hecho de construirse ramales de ferrocarril en una finca arrendada sin consentimiento del arrendador no es por sí solo causa para una acción de desahucio, cuando no se ha probado que la construcción de esos ramales disminuya el valor de la finca ni sea contraria a su naturaleza o a la costumbre de la tierra y cuando el arrendatario ha continuado observando la debida diligencia en el disfrute de la finca sin perjuicio del derecho que pueda asistir al arrendador contra el arrendatario en virtud del artículo 1459 del Código Civil Revisado.

Id.—Corte de Montes y Maderas de Construcción—Responsabilidad del Causahabiente—Relaciones Jurídicas entre el Arrendador y los Causahabientes del Arrendatario.—Cuando las relaciones jurídicas entre el arrendador y los causahabientes del arrendatario contra quienes se ejercita la acción de desahucio son de tal naturaleza o tan especiales o tan complejas que no sea racionalmente posible apreciar con exactitud su finalidad y trascendencia, no es el procedimiento sumario del juicio de desahucio el adecuado para determinar la responsabilidad que con relación al arrendador pueda caber a los causahabientes del arrendatario por actos cometidos por sus causantes, debiendo en tales casos acudirse al juicio ordinario.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José A. Poventud, Arturo Aponte, Jr. y Horacio S. Belaval.*

Abogado de los apelados: *Sr. Luis Muñoz Morales.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

En 9 de febrero de 1911, las Sras. Concepción y Josefina Veve, con sus respectivos esposos José S. Belaval y Prizco Vizcarrondo, presentaron demanda enmendada ante la Corte de Distrito del Distrito Judicial de Humacao contra ''The Fajardo Sugar Growers' Association,'' suplicando se dictara sentencia por la que se declarara haber lugar al desahucio de la demandada, representantes y empleados y se les ordenara el desalojo de la finca ''Aurora'' de que las demandantes eran dueñas, con las costas y honorarios a cargo de la corporación demandada.

A dicha demanda se opuso la parte demandada y celebrado el juicio, la corte dictó sentencia en doce de abril de 1911 declarando sin lugar la demanda, con las costas a la parte actora, la que interpuso recurso de apelación para ante esta Corte Suprema.

En su alegato escrito la representación de la parte apelante limita a tres los hechos alegados en su demanda y esos hechos son los siguientes:

1°. Falta de pago del precio del arrendamiento según los términos convenidos en escritura de 31 de marzo de 1906.

2°. Haber permitido la corporación demandada que la ''The Fajardo Development Co.'' haya establecido servidumbre de paso de un ferrocarril por la hacienda ''Aurora'' y conectado en dos lugares la vía del ferrocarril de esa corporación con la de la ''Esperanza Central Sugar Co.,'' todo sin consentimiento de las dueñas de la ''Aurora'' y haciendo desmerecer esa finca con perjuicio de las dueñas.

3°. Haber usado de la hacienda ''Aurora'' los arrendatarios y ocupantes sin la diligencia de un padre de familia, talando, cortando y destruyendo la mayor parte de los mon-

tes, sin haber replantado ninguna porción de ellos, con cuyos actos, no pactados, han hecho desmerecer dicha finca.

De esos hechos deriva la parte apelante las causas de desahucio comprendidas en los números. 2°., 3°. y 4°. del artículo 1472 del Código Civil, a saber:

2°. Falta de pago en el precio convenido.

3°. Infracción de cualquiera de las condiciones estipuladas en el contrato.

4°. Destinar la cosa arrendada a usos o servicios no pactados que la hagan desmerecer, o no sujetarse en su uso a lo que se ordena en el número 2°. del artículo 1458.

Ese artículo en su número 2°. establece que el arrendatario está obligado a usar de la cosa arrendada como un diligente padre de familia, destinándola al uso pactado y en defecto de pacto, al que se infiera de la naturaleza de la cosa arrendada según la costumbre de la tierra.

Con relación a la primera causa que se alega para el desahucio, han resultado comprobados en el juicio los siguientes hechos:

(*a*) Por escritura pública de 31 de marzo de 1906 D. José S. Belaval, como apoderado de su esposa Doña Concepción Veve y Doña Josefina Veve de Vizcarrondo otorgaron a favor de "The Esperanza Central Sugar Co." contrato de arrendamiento de la hacienda "Aurora" de que aquellas son dueñas, por término de once años y precio de $2,400 el primer año y $4,800 cada uno de los años siguientes, cantidades que debían ser pagadas por la arrendataria a las condueñas por mitad y por semestres adelantados en los días 1°. de julio y 1°. de enero de cada año, habiéndose convenido expresamente que si la arrendataria o sus causahabientes dejaran de pagar cualquier semestre oportunamente, tendrían las dos arrendadoras la facultad de rescindir cada una por su parte el contrato y promover el desahucio inmediato de la finca o continuarlo si lo creyeran conveniente, reclamando el pago de lo adeudado en la correspondiente vía.

(*b*) Todos los bienes y derechos de "The Esperanza Cen-

tral Sugar Co." fueron vendidos en pública subasta por el Marshal de la Corte de Distrito de los E. U. para Puerto Rico, habiéndose otorgado la correspondiente escritura de venta en 12 de julio de 1909 a favor de "The Colonial Sugar Co.," a cuya corporación fué adjudicado el contrato de arrendamiento de la hacienda "Aurora."

(*c*) Por otra escritura otorgada en New York a 17 de noviembre de 1909 "The Colonial Sugar Co." traspasó y enajenó a favor de "The Fajardo Sugar Growers' Association" varios contratos de arrendamiento, entre ellos el de la hacienda "Aurora," bajo las mismas estipulaciones que lo regulaban.

(*d*) El canon correspondiente al semestre de arrendamiento de enero a julio de 1910, que debía ser pagado por adelantado en 1º. de enero citado, fué satisfecho mediante cheques expedidos por Don Jorge Bird León a favor de las arrendadoras, Doña Concepción y Doña Josefina Veve, y a cargo del Banco Territorial y Agrícola en 29 de diciembre de 1909, habiendo sido endosado uno de los cheques a favor del American Colonial Bank y el otro a favor de Bird y Barceló.

(*e*) Para pagar el canon de arrendamiento de julio a diciembre de 1910 que debía ser satisfecho en 1º. de dicho julio, envió la parte demandada, por conducto de sus abogados, a cada una de las demandantes un documento de depósito hecho en el American Colonial Bank por la suma de $1,200 en 27 de junio anterior, habiendo devuelto Doña Concepción el documento de depósito a ella remitido por observar en el mismo notable error y por si la remitente estimaba conveniente rectificarlo, según expresa dicha Señora en carta del 30 del propio junio. En otra carta del 6 de julio siguiente la misma Doña Concepción reiteró la devolución del documento por subsistir el mismo error a que se había referido. También Doña Josefina Veve devolvió el 30 de junio de 1910 el documento de depósito a su favor.

(*f*) Por actas notariales de 11 y 12 de julio de 1910, respectivamente fueron requeridas Doña Josefina y Doña Con-

cepción Veve por ante notario para que aceptaran los dos documentos de depósito de que se deja hecho mérito en pago del canon del semestre de arrendamiento de julio a diciembre de 1910, pues de otro modo se haría la consignación en forma, habiéndose negado una y otra señora a recibir en pago tales documentos de depósito.

(*g*) "The Fajardo Sugar Growers' Association" acudió entonces a la Corte de Distrito de Humacao para que se tuviera por hecha la consignación de los $2,400 mediante los dos certificados de depósito ya referidos, y dicha corte por orden de 19 de julio de 1910 ordenó que esos certificados quedaran bajo la guarda y custodia del secretario de la corte, como representativos de las cantidades que debían ser satisfechas a Doña Josefina y Doña Concepción Veve para cubrir el semestre de arrendamiento de la hacienda "Aurora" correspondiente a los meses de julio a diciembre de 1910.

(*h*) La orden expresada fué notificada primero a Doña Josefina Veve y en 13 de diciembre del año expresado a Doña Concepción Veve y a su esposo Don José S. Belaval, quienes al día siguiente impugnaron por escrito la consignación hecha, sin que aparezca del récord la resolución que sobre ella dictara la corte; apareciendo sí que con fecha 28 de diciembre citado los abogados de "The Fajardo Sugar Growers' Association" solicitaron de la corte se tuvieran por retirados los certificados de depósito y sustituídas las cantidades que representaban por billetes de los Estados Unidos, a lo que accedió la corte disponiendo por orden de 31 de diciembre la sustitución pedida, con cuyo motivo los esposos Veve-Belaval presentaron moción para que fuera anulada dicha orden, moción que fué argumentada por las partes, sin que conste la resolución que recayera.

(*i*) En cuanto al semestre de arrendamiento de enero a junio de 1911, consta que con fecha 31 de diciembre de 1910 tanto los esposos Veve-Belaval como Doña Josefina Veve fueron requeridos para que aceptaran el pago, cuyo requerimiento respecto de los esposos citados fué repetido en 3 de

enero siguiente; y como por ninguno de ellos se verificara la aceptación, la corte de Humacao por orden de 7 de enero siguiente ordenó el depósito en poder del secretario de la cantidad de $2,400 en billetes del Tesoro nacional consignados por "The Fajardo Sugar Growers' Association" a favor de las arrendatarias y en proporción de una mitad a cada una de ellas para cubrir el semestre indicado, quedando la referida cantidad a disposición de las mismas.

De los hechos expuestos se desprende que la parte demandada como causahabiente de los derechos de "The Esperanza Central Sugar Co." desde 17 de noviembre de 1909 ha debido pagar hasta la fecha de la interposición de la demanda y por adelantado tres semestres de arrendamiento, el primero, de enero a junio de 1910, el segundo de julio a diciembre del mismo año y el tercero de enero a junio de 1911.

Sobre el pago del canon correspondiente al semestre de enero a junio de 1910 fué satisfecho oportunamente mediante cheques que aceptaron y cobraron las arrendadoras sin reparo alguno; y ellas en su alegato escrito no impugnan la validez de ese pago ni tampoco podían impugnarlo legalmente por la razón de que nadie puede ir contra sus propios actos. La impugnación se contrae al pago de los cánones de arrendamientos correspondientes a los semestres de junio a diciembre de 1910 y de enero a junio de 1911.

En cuanto al pago del semestre de arrendamiento de julio a diciembre de 1910 alega la parte apelante que el ofrecimiento de pago hecho a Doña Josefina Veve mediante documentos de depósito expedidos a su favor en 27 de junio del mismo año es ineficaz en derecho: 1°. porque ese ofrecimiento se hizo tres días antes de vencerse el término del pago fijado para el 1°. de julio del año 1910 y después se repitió a los cinco días de vencido dicho término: 2°. porque el ofrecimiento se hizo a Doña Concepción y a Doña Josefina Veve y no a sus respectivos esposos Don José S. Belaval y Don Prisco Vizcarrondo: 3°. porque el ofrecimiento de pago se hizo en un documento mercantil y no en la especie pactada.

Examinemos esas razones a la luz de los preceptos legales aplicables al caso.

Establece el artículo 1092 del Código Civil que las obligaciones para cuyo cumplimiento se haya señalado un dia cierto, sólo serán exigibles cuando el día llegue; y bajo ese precepto legal es indudable que las demandantes no podían reclamar a la demandada antes del 1º de julio del año 1910 el pago del canon del arrendamiento correspondiente al semestre de julio a diciembre de dicho año; pero ¿podía la demandada verificar ese pago, como trató de hacerlo, en 27 de junio anterior o sea cuatro días antes de vencerse la obligación de pago? A esa pregunta no vacilamos en contestar afirmativamente, invocando el artículo 1094 del Código citado, según el cual, siempre que en las obligaciones se designa un término se presume establecido en beneficio de acreedor y deudor, a no ser que del tenor de aquéllas o de otras circunstancias resultara haberse puesto en favor del uno o del otro.

Examinada la escritura de arrendamiento de 31 de marzo de 1906, en la que radica el derecho de la parte demandada a poseer la hacienda "Aurora" de las demandantes, encontramos que en favor de éstas fué que se estableció el beneficio de recibir por adelantado el precio del canon de los semestres de arrendamiento, y en perjuicio de la parte arrendataria la obligación de verificar el pago en esa forma. De ahí que con el pago hecho antes del día fijado se ampliaba el beneficio de la parte arrendadora, sin que por ésta se haya alegado ni demostrado que con el anticipo se le causara perjuicio alguno. Verificado pues el ofrecimiento de pago en 27 de junio de 1910, antes de que llegara el día primero de julio en que vencía la obligación, y redundando ese pago en beneficio de los intereses del acreedor y en perjuicio de los del deudor, es claro que tal anticipo entrañaba el cumplimiento de la obligación para el día de su vencimiento. Y tan es así, que las Sras. demandantes aceptaron el pago del canon del semestre de arrendamiento de enero a junio de 1910, aunque los cheques para el

pago fueron expedidos en 29 de diciembre de 1909 o sea tres días antes del vencimiento de la obligación.

Hay además con respecto al canon de arrendamiento de los meses de julio a diciembre de 1910, que el pago se verificaba en documentos de depósito expedidos en 27 de junio del mismo año, contra cuya admisión como tales o por ser prematuros no oponían reparos las demandantes, sino que estaban dispuestas a aceptarlos cuando se rectificara el error que en ellos observaron y que no expresaban cual fuera. Si no les convenía recibir el dinero depositado hasta el día 1º. de julio, árbitros eran de dejar el dinero depositado para recibirlo·precisamente en la fecha indicada.

Con lo dicho dejamos establecido que el ofrecimiento de pago hecho en 27 de junio de 1910 fué eficaz en derecho por razón del tiempo en que se hizo, atendidas todas las circunstancias del caso, aunque se hiciera con anterioridad al vencimiento de la obligación.

Y el ofrecimiento de pago se hizo a quien podía hacerse, en cumplimiento de lo que previene el artículo 1130 del Código Civil. No era necesario hacerlo a los respectivos esposos de las Sras. Concepción y Josefina Veve: 1º. porque ellas fueron las que otorgaron el contrato de arrendamiento de la hacienda "Aurora" de que eran dueñas, a favor de "The Esperanza Central Sugar Co." de cuyos derechos es hoy causahabiente la sociedad demandada, y eran por tanto las que *prima facie* tenían derecho al pago: 2º. porque en ese mismo contrato se estipuló que el pago se haría por la arrendataria a las condueñas, teniendo las dos arrendadoras por falta de pago el derecho de rescindir el contrato y de promover el desahucio si así les convenía, reclamando el pago de lo adeudado en la vía correspondiente: 3º. porque Don José S. Belaval y Don Prisco Vizcarrondo no han impugnado la validez de dicha estipulación en el presente juicio ni aparece que lo hayan hecho fuera del mismo, con la particularidad de que Belaval como apoderado de su esposa intervino en el contrato de arrendamiento: 4º. porque Doña Concepción y Doña Josefina Veve

aceptaron el pago del canon de arrendamiento correspondiente al semestre de enero a junio de 1910 sin hacer la mas ligera indicación acerca de que sus esposos fueran los que tuvieran derecho a percibirlo como tampoco éstos han hecho reclamación alguna, dando así lugar todos con su proceder a que si la parte demandada incurrió en el error que se le imputa, dicho error fuera originado por el proceder de las arrendadoras y sus esposos: y 5°. porque el artículo 160 del Código Civil preceptúa que cada uno de los cónyuges tiene la libre disposición y administración de sus bienes propios; y como la hacienda ''Aurora'' pertenece en propiedad a las demandantes en virtud de cuyo título fué que la arrendaron por propio derecho a ''The Esperanza Central Sugar Co.'' y el cobro de los cánones de ese arrendamiento es un acto de administración, es claro que el ofrecimiento de pago del canon de arrendamiento de que se trata fué bien hecho a las mismas por la demandada.   Y conste que no discutimos si hubiera sido también legal en el caso de que se hubiera hecho a los esposos de las arrendadoras, teniendo en cuenta que con arreglo al artículo 1327 del Código Civil, el marido será el administrador de la sociedad de gananciales, que según el 159, el marido será el administrador de la sociedad conyugal salvo estipulación en contrario y que según el número 3°. del 1316, deben reputarse bienes gananciales los frutos, rentas o intereses percibidos o devengados durante el matrimonio procedente de los bienes comunes o de los peculiares de cada uno de los conyuges.   Lo que si sostenemos en el presente caso, es que con arreglo a los hechos y la ley el ofrecimiento de pago se hizo a quien podía hacerse.

Y tampoco al ofrecerse el pago en documentos de depósitos fué infringido el artículo 1138 del Código Civil, que dice así:

''El pago de las deudas de dinero deberá hacerse en la especie pactada, y no siendo posible entregar la especie, en la moneda de plata u oro que tenga curso legal en Puerto Rico.

''La entrega de pagarés a la orden o letras de cambio u otros documentos mercantiles, sólo producirá los efectos del pago cuando

hubiesen sido realizados, o cuando por culpa del acreedor se hubiesen perjudicado.

"Entre tanto la acción derivada de la obligación primitiva quedará en suspenso."

Con arreglo a los preceptos legales transcritos las demandantes no estaban en la obligación de aceptar el pago del semestre de arrendamiento de julio a diciembre de 1910, recibiendo los documentos de depósitos enviados por la parte demandada; pero como ellas no rechazaron en absoluto tales documentos sino que los devolvieron por observar en los mismos notable error que debía ser rectificado, claro es que manifestaron su propósito de aceptarlos, siempre que se hiciera la rectificación.

Ese notable error que las demandantes no expresaron cual fuera, ni estaban en el deber de expresarlo al verificar la devolución, quedó sujeto a la apreciación que en su día hiciera la autoridad judicial de la razón de la negativa de las acreedoras, cuando fuera impugnada por ineficaz en derecho la consignación de la cosa debida, por no ajustarse estrictamente a las disposiciones que regulan el pago.

Dicho error consistió según explican los apelantes en su alegato ante esta Corte Suprema, en que tales documentos se habían extendido a nombre de las demandantes y no al de sus esposos, y ya dejamos establecido que el ofrecimiento de pago se hizo a quien podía hacerse. Y no puede alegarse que la consignación quedó sin efecto por haberse retirado los documentos de depósito después de haber sido admitidos por la autoridad judicial de Humacao, pues fueron sustituídos por los mismos valores que representaban, y ante esa sustitución no podía quedar subsistente la obligación de la parte demandada.

Sostiene la parte apelante que las operaciones de ofrecimiento de pago, de requerimiento y de consignación han de verificarse en el mismo día en que el pago debió haberse hecho, aunque en momentos sucesivos de ese mismo día, mientras que del juicio resulta que aquellos actos tuvieron lugar

en días distintos, verificándose la consignación 19 días después del vencimiento de la obligación, o del día fijado para el pago.

Entre los preceptos legales que regulan el ofrecimiento del pago y la consignación, comprendidos en los artículos 1144 al 1149 del Código Civil, no encontramos uno sólo que establezca la doctrina sostenida por la parte apelante, y si bien el artículo 1145 establece que la consignación será ineficaz, si no se ajusta estrictamente a las disposiciones que regulan el pago, esas disposiciones que son las comprendidas en los artículos 1125 a 1139 del Código Civil han sido cumplidas en la parte en que se suponen infringidas. La consignación hecha en forma legal, cuando el ofrecimiento de pago se hizo oportunamente, se retrotrae a la fecha de dicho ofrecimiento de pago, siempre que aquélla se hiciera dentro de un término prudencial.

Por lo que toca al semestre de arrendamiento de enero a junio de 1911, que debía ser satisfecho en 1°. de enero citado, aparece que el ofrecimiento de pago se hizo en 31 de diciembre de 1910 y 3 de enero de 1911, verificándose la consignación en 7 de enero citado; y aunque admitamos en mera hipótesis que el primer ofrecimiento fué ilegal por más que favorecía al deudor, siempre resultaría que como el día 1°. de enero del año 1911 fué domingo y que el día 2 era feriado por ministerio de la ley, el primer día hábil para hacer el pago fué el 3 de enero en que se hizo el segundo ofrecimiento, teniendo por tanto tal ofrecimiento el mismo efecto que si se hubiera realizado en el día señalado, según el precepto del artículo 389 del Código Político.

No ha habido pues falta de pago de cánones del arrendamiento de la hacienda "Aurora" que pueda dar lugar al desahucio solicitado.

Veamos ahora lo que nos dice el récord sobre los otros dos hechos expuestos por los apelantes en su alegato como causa de desahucio.

1°. En la clausula 5ª. del contrato de arrendamiento de

la hacienda "Aurora" a "The Esperanza Central Sugar Co." celebrado el 31 de marzo de 1906, se estipuló que se concedía a la arrendataria (*a*) el uso de los montes, (*b*) el derecho de usufructuar las fincas o las plantaciones de cañas u otras que estimara convenientes, y (*c*) una servidumbre de vía de diez metros de ancho a través de la finca para establecer una vía férrea, cuya servidumbre, según se pactó en la clausula 10ª. del mismo contrato había de quedar subsistente a su terminación.

2º. Por escritura pública de transacción, otorgada en 6 de enero de 1910 por Don José S. Belaval y Don Miguel Zalduondo Veve, como apoderados respectivamente de Doña Concepción y Doña Josefina Veve, y Don Jorge Bird, como administrador general de "The Fajardo Development Company," con intervención, de la demandada "The Fajardo Sugar Growers' Association," estipularon los otorgantes que "The Fajardo Development Company" podría conectar su vía férrea con la de la "Esperanza Central Sugar Company" a través de la finca de Doña Concepción y Doña Josefina Veve para usarla durante el cosecho de 1910, sin que las dueñas del terreno exigieran por ello indemnización alguna, pero sin exceder el disfrute de aquel derecho del plazo que tiene concedido dicha compañía para terminar la construcción de su línea general con arreglo a la franquicia otorgádole y para levantar la vía de "The Esperanza Central Sugar Co." fijado por el Consejo Ejecutivo.

3º. En el acto del juicio fué presentado como prueba un plano de las vías férreas de la hacienda "Aurora," que ambas partes aceptaron, reconociendo que la vía construída por la Central Esperanza, representada por la letra A, fué autorizada por el contrato de arrendamiento de la hacienda "Aurora," cuya vía está utilizando "The Fajardo Development Company"; que la vía general marcada con las letras C. C. pertenece a la "Fajardo Development Company" y se construye sobre parcelas de terreno que esa compañia adquirió de las señoras demandantes; que otra vía, letra B,

. fué contruída por la Central Esperanza desde el año 1906, cuando ocupaba la finca como arrendataria; que la vía letra D, es la antigua conexión que fabricó la "Fajardo Development Company" en virtud de la autorización que le fué concedida por la escritura ya expresada de 6 de enero de 1910; y que las vías, letras E y F, son las conexiones actuales de la vía general de "The Fajardo Development Company," construídas en diciembre de 1910, para conectar su dicha vía general con la antigua de la Central Esperanza marcada con la letra A, y cuyas conexiones han sustituído a la antigua, letra D, usándolas igualmente "The Fajardo Development Company."

4°. Aunque la prueba testifical aportada al juicio es contradictoria no solo en cuanto al mayor o menor número de cuerdas de monte que había en la Hacienda "Aurora," al recibirla en arrendamiento la "Esperanza Sugar Company," sino también en cuanto al valor de sus maderas, es lo cierto, por haberse comprobado, que el corte de árboles se realizó por la "Esperanza Sugar Company" y no por la corporación demandada.

Ante los hechos que dejamos expuestos respecto de los ramales de ferrocarril construídos sobre la hacienda "Aurora" y en relación al corte de árboles de los montes de dicha hacienda, opinamos debe sostenerse la sentencia apelada desestimando no sólo el primer motivo del recurso, sino también los demás que estamos examinando.

Por lo que toca a la construcción de lós ramales de ferrocarril, son de aplicación las razones en que descansa la sentencia que dictamos en 1°. de junio de 1906 en un caso análogo al presente, (*Rodríguez de las Albas* v. *Jiménez,* 11 D. P. R. 12), en que se alegó como motivo de desahucio el hecho de que el arrendatario sin el conocimiento de la arrendadora demandante había establecido en una parte de la finca arrendada una vía férrea para el transporte de cañas de "The Juncos Central Company."

Entonces establecimos la siguiente doctrina:

"Y dice el ilustrado comentarista Don José María Manresa y Navarro, en el tomo 10, página 583, al comentar el artículo 1559 del Código Civil antiguo que es exactamente igual al 1472 del revisado:

"No se puede negar que desde el momento en que tal ocurre, el arrendatario infringe una de las condiciones del contrato, y en este sentido parece estar comprendido en la causa tercera de desahucio de las que enumera el artículo 1569. Pero si atentamente se examina el enlace de todos los números de dicho artículo, y lo que en relación unos con otros quieren expresar, no será difícil llegar a la conclusión que la lógica impone, de que si el No. 4 se ocupa concreta y especialmente del uso y destino de la finca arrendada como causa de desahucio, no se deben considerar comprendidas en el No. 3 del artículo 1569, a pesar de su generalidad, aquellas condiciones que a ese uso y destino se refieran, porque esto implicaría una duplicidad de motivos de desahucio que no se justifica por ninguna razón.

"Los hechos que dan lugar al desahucio relacionados con la forma del uso de la finca están comprendidos en la fórmula del número 4 del artículo 1569 y a ella habrá que acudir exclusivamente para ver si en la práctica se da o nó. Ahora bien; esta fórmula exige para que la causa de desahucio exista, que se falte a la diligencia del padre de familia que el No. 2 del artículo 1555 (No. 2 del 1458 del Código Civil Revisado) requiere, o que el uso no pactado que el arrendatario haga de la cosa implique el desmerecimiento de ésta. Si el arrendatario se limita a dar a la cosa un destino distinto de aquel que se estipuló pero dentro de este nuevo uso observa la diligencia debida y no hace desmerecer en nada a la cosa, no hay en rigor la causa de desahucio que establece el No. 4 del artículo 1569.

"Siempre habrá una hipótesis de incumplimiento por parte del arrendatario de la obligación que le impone el No. 2 del artículo 1555, hipótesis que estará sujeta a la sanción del artículo 1556 (art. 1458 del Revisado); pero el modo judicial de hacer efectiva esa sanción en interés del arrendador no será en nuestra opinión, el juicio de desahucio, porque faltará la causa legal para el ejercicio de esta acción. Esta condición es justa, porque si la falta de diligencia y el desmerecimiento de la cosa imperiosamente demandan un procedimiento de la índole del desahucio, cuando no se dan esas circunstancias, sino simplemente un mero cambio de uso cuya justificación tal vez fuera posible al arrendatario, parece lógico conceder una mayor amplitud de medios de defensa y un procedimiento donde acuciosamente se diluciden las cuestiones planteadas.

"Nosotros estamos ciertamente autorizados para apoyarnos en la respetable autoridad citada, porque nuestro Código Civil actual no ha variado en este punto y porque el razonamiento que se ha insertado es sano y convincente.

"En este caso concreto el arrendatario no ha infringido ninguna de las condiciones estipuladas en el contrato. El debía destinar las fincas a cualquier clase de siembras y al cuido de ganados y si a ellas dió en parte un uso distinto, abriendo el camino, pero observó la debida diligencia sin que se alegue las ha hecho desmerecer ni tampoco que ese uso es contrario a la costumbre de la tierra, no hay causa alguna de desahucio, aunque puede haber la sanción del artículo 1459 del Código Civil Revisado, porque siempre existirá, como dice Manresa, una hipótesis de incumplimiento, por parte del arrendatario, de la obligación que le impone el número 2 del artículo 1458."

La doctrina expuesta es perfectamente aplicable al presente caso, en el que si bien se ha alegado el desmerecimiento de la Hacienda "Aurora," no se ha probado que la construcción de los ramales, no autorizados por las dueñas, disminuya el valor del fundo, ni sea contraria a su naturaleza o a la costumbre de la tierra.

¿Pero procederá el desahucio por el corte de montes y maderas de construcción que realizó la "Esperanza Sugar Co." y no su causahabiente la corporación demandada, o en otros términos, será responsable esa corporación de actos ejecutados por su causante a los efectos del juicio de desahucio?

El Tribunal Supremo de España en sentencia de 2 de diciembre de 1904 dejó consignada la doctrina, de que establecido el juicio de desahucio como procedimiento de reintegrar al dueño de una finca en el pleno ejercicio de sus derechos dominicales, cuando el arrendatario falta abierta y conocidamente a las obligaciones del contrato o cuando haya expirado su término, es preciso, según reiterada jurisprudencia del expresado Tribunal, para el éxito de la acción, que sean de tal naturaleza las relaciones existentes entre arrendador y arrendatario, que se compruebe claramente en el juicio la infracción de las obligaciones pactadas, ya con rela-

ción al pago del precio o merced estipulada, ya respecto de cualquier otra obligación relativa a la manera de llevarse la finca arrendada, pues cuando las obligaciones respectivas son de tal naturaleza o tan especiales o tan complejas que no sea racionalmente posible apreciar con exactitud su finalidad y trascendencia, se convertiría el procedimiento sumario del juicio de desahucio en medio de obtener con cierta violencia la rescisión de un contrato sin las garantías de defensa e información que ofrecen los juicios declarativos.

En otra sentencia de 29 de mayo de 1906 declaró el mismo tribunal que la acción de desahucio sólo es procedente cuando entre el arrendatario y el arrendador o el dueño de la finca y quien la lleva en precario no existen más relaciones jurídicas que las derivadas de dicho carácter, y cuando acerca de ellas no existen dudas fundadas que requieran un examen y discusión propios solamente del juicio declarativo correspondiente. Aceptamos tal doctrina como buena.

Ahora bien, aunque las señoras demandantes y la compañía demandada no celebraron entre sí contrato alguno de arrendamiento de la hacienda "Aurora," aquéllas han aceptado y aceptan que dicha compañía es actualmente la causahabiente de los derechos y acciones de la "Esperanza Sugar Company" con la que las demandantes celebraron ese contrato por escritura pública de 31 de marzo de 1906, y prueba elocuente de ello es la existencia del presente juicio seguido contra la corporación demandada por falta de pago de cánones del arrendamiento estipulados en dicho contrato y otras causas atinentes al arrendamiento.

Además de las relaciones jurídicas entre las demandantes y la corporación demandada, derivadas del contrato de arrendamiento a contar desde el momento en que la demandada se constituyó en causahabiente con aceptación de las demandantes de los derechos y acciones de la "Esperanza Sugar Company," cuyas relaciones son las que median entre arrendador y arrendatario, surgieron otras relaciones jurídicas entre las demandantes y la corporación demandada, como

tal causahabiente, originadas por los actos que con infracción de las condiciones del contrato de arrendamiento hubiera podido ejecutar la "Esperanza Sugar Company"; y no es materia de un juicio de desahucio sino de juicio declarativo, determinar cuáles sean esas relaciones jurídicas en que las partes demandante y demandada no están conformes, pues mientras las demandantes sostienen que la corporación demandada es responsable de los actos ejecutados por la "Esperanza Sugar Co.," con infracción de las condiciones de arrendamiento, la compañía demandada rehuye semejante responsabilidad.

No concluiremos sin hacer mérito de que por los demandantes y apelantes se tomaron varias excepciones en el juicio, que se consignan separadas y numeradas en el pliego de exposición del caso y de excepciones. Esas excepciones se copian literalmente por la representación de los demandantes y apelantes en su alegato ante esta Corte Suprema, como errores cometidos por la corte inferior; pero no han sido argumentadas por escrito ni oralmente, ni se han puntualizado los errores cometidos, según previene el Reglamento de esta corte, lo cual podría envolver una presunción de abandono o desistimiento de ellas y excusarnos de su examen. Sin embargo, hemos examinado dichas excepciones, y atendidos los términos en que se ha planteado el debate por los demandantes apelantes, y el prisma bajo el cual han sido consideradas las cuestiones legales propuestas, hemos llegado a la conclusión de que ninguna de esas excepciones es de tal alcance que pueda llevarnos a la revocación de la sentencia apelada.

Por las razones expuestas es de confirmarse la sentencia apelada que dictó la Corte de Distrito de Humacao en 12 de abril de 1911.

*Confirmada.*

Jueces concurrentes: Sres. Asociados MacLeary, del Toro y Aldrey.

El Juez Asociado Sr. Wolf, manifestó estar conforme con la sentencia.