ENRIQUE CAMPOS DEL TORO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. CARLOS SANTANA BECERRA, JUEZ, demandado; EDUARDO MORALES MUÑOZ, interventor.

Número 1999.

*Sometido:* 1 de junio de 1953. *Resuelto:* 11 de agosto de 1953.

*Rodríguez Otero & Ramírez, Sebastián García Díaz* y *José Quiñones Elías,* abogados del peticionario; *Miranda Esteve & Martínez Álvarez, Jr.,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El 5 de octubre de 1951, en el extinto Tribunal Municipal de Puerto Rico, Sala de San Juan, radicó Eduardo Morales Muñoz la presente acción de desahucio contra Enrique Campos del Toro. Alegó el demandante, originalmente, dos causas de acción contra el demandado: la primera, que el demandado había violado el contrato de arrendamiento por haber subarrendado el local arrendado sin el consentimiento previo y por escrito del arrendador; la segunda, por falta de pago del alquiler correspondiente al mes de agosto de 1951. Apa-

rece de autos que el demandado radicó su contestación a la demanda en noviembre de 1951, sin que conste la fecha exacta.

Convinieron las partes la consolidación de las dos comparecencias que ordena la ley, y, pendiente la vista del caso, el demandado consignó en la Secretaría del Tribunal, el 23 de enero de 1952, los cánones de arrendamiento adeudados al demandante por los meses de agosto a diciembre de 1951, ambos inclusive. El 7 de febrero de 1952, el demandante solicitó el retiro de los cánones así consignados y el 12 de febrero el tribunal ordenó que le fueran entregados. De los autos y de las conclusiones del tribunal a quo, se desprende además que, posteriormente, el demandado continuó enviando directamente a los abogados del demandante el importe de los cánones vencidos.

Con vista de la consignación de cánones adeudados y de la resolución ordenando su entrega al demandante, éste desistió de la causal por falta de pago, continuando la acción por violación de contrato, por razón de haber subarrendado el arrendatario sin permiso del arrendador.

Llamado el caso para vista en el Tribunal Municipal, el demandado formuló "excepción previa de falta de causa de acción" por el fundamento de haber retirado el demandante los cánones consignados por el demandado después de radicarse la demanda. El Tribunal Municipal declaró con lugar la llamada excepción previa y, a solicitud del demandante, dictó sentencia el 23 de abril de 1952 declarando sin lugar la demanda.

Apelado el caso para ante el Tribunal de Distrito (hoy Superior) el demandado levantó la misma cuestión que había promovido en su "excepción previa" ante el Tribunal Municipal, solicitando por esos fundamentos la desestimación de la apelación. Celebrada una vista especial en la que se presentó prueba por ambas partes, el tribunal a quo, en resolución al efecto, declaró sin lugar la cuestión planteada por el

demandado. Concluyó el juez recurrido que la aceptación por el demandante de los cánones vencidos no le privan de su derecho a continuar la acción de desahucio basada en el subarriendo por el arrendatario sin permiso del arrendador. Ordenó el tribunal, por lo tanto, que el caso fuese señalado en sus méritos, pero, a solicitud del demandado, este Tribunal expidió un auto de *certiorari* para revisar la resolución negando la desestimación de la apelación.

Sostiene el peticionario que erró el tribunal a quo "al concluir que el demandante no ha renunciado a su derecho a desahuciar por razón del subarriendo al aceptar los cánones de arrendamiento consignados por el arrendatario después de radicar la demanda".

El peticionario descansa en el caso de *Igartúa* v. *Ruiz*, 73 D.P.R. 354, en el cual se resolvió que cuando una acción de desahucio se basa en el no pago de ciertos cánones y luego se aceptan éstos y los posteriores al quebrantamiento del contrato, ello equivale a una renuncia al derecho a desahuciar.

Como ya hemos indicado, la acción de desahucio en el caso de autos se basa en un alegado subarriendo verificado sin la autorización del arrendador. Los artículos 12, 12–A–(3) y 12–B de nuestra Ley de Alquileres Razonables (Ley núm. 464 de 25 de abril de 1946 ((1) pág. 1327), según enmendados dichos artículos por las leyes 201 de 14 de mayo de 1948 ((1) pág. 575) y 24 de 21 de agosto de 1948 ((2) pág. 239) disponen, en parte, lo siguiente:

"Artículo 12.—Sea cual fuere la fecha de su edificación u ocupación y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes. Lo anterior es aplicable tanto a contratos escritos como a convenios orales y la prórroga se entenderá por los plazos que fija el Artículo 1471 del Código Civil, pero nunca por un período

mayor que la duración de la emergencia declarada en esta Ley. Dicha prórroga es también aplicable a solares dados en arriendo y en los cuales existen edificaciones pertenecientes a dueño distinto al del solar.

"Artículo 12–A.—Como excepciones a lo dispuesto en el artículo precedente, el arrendador podrá negar la prórroga del contrato de arrendamiento y en su consecuencia promover la acción de desahucio solamente en los casos siguientes:

"1.— . . . . . . .

"2.— . . . . . . .

"3.—Por haber el inquilino subarrendado o cedido el uso de la propiedad arrendada, en todo o en parte, sin la autorización escrita del arrendador.

"Artículo 12–B.—En el caso previsto en el inciso 1 del artículo 12–A, el arrendador podrá resolver el contrato y, en su consecuencia, iniciar una acción de desahucio, por falta de pago del alquiler legal, para recobrar la posesión del local o vivienda, aun cuando no haya transcurrido el término fijado para la duración del contrato.

"En los casos previstos en los incisos 2 a 5, inclusive, del artículo 12–A, no podrán hacerlo hasta después de haberlo notificado por escrito de modo fehaciente al inquilino con no menos de sesenta (60) días de antelación a la fecha de la presentación de la demanda de desahucio."

En el caso de autos, el contrato original de arrendamiento está aún vigente, expirando, según sus términos, el 15 de julio de 1954. Bajo el artículo 12 transcrito, la prórroga del contrato es obligatoria para el arrendador al llegar el día del vencimiento pactado en el contrato de arrendamiento, y, bajo el artículo 12–A transcrito el arrendador puede negar la prórroga cuando el inquilino ha subarrendado sin una debida autorización del arrendador, como se alega en el caso de autos. A primera vista, y de acuerdo con esas disposiciones, el arrendador podría alegar el subarriendo no autorizado, como causal de desahucio, solamente al vencer el término arrendaticio pactado. Pero bajo el artículo 12–B, se reconoce la facultad del arrendador de resolver el contrato (esto es, aun antes del vencimiento del término pactado) en caso de un subarriendo indebido, estableciéndose como único

requisito previo a tal resolución el que el arrendador notifique al inquilino, por escrito y en forma fehaciente, su decisión de resolver el contrato, con no menos de sesenta días de antelación a la fecha de la presentación de la demanda de desahucio.

■ En virtud de las disposiciones transcritas, de las alegaciones contenidas en la demanda en el caso de autos, surge la facultad del arrendador de resolver el contrato de arrendamiento, en forma compatible con lo señalado en los artículos 1459 y 1077 de nuestro Código Civil. El 1459 dispone, en parte, que el arrendador podrá desahuciar judicialmente al arrendatario cuando este último haya cometido alguna infracción de cualquiera de las condiciones estipuladas en el contrato. Surge de las alegaciones de la demanda enmendada en este caso, y de la escritura de arrendamiento otorgada entre las partes, que fué admitida como prueba, que tal escritura contiene una cláusula que dispone que "el arrendatario no podrá subarrendar el local de referencia si no es con el consentimiento expreso y por escrito de los arrendadores". En la demanda enmendada se alega que el inquilino subarrendó el local sin que hubiera obtenido previamente la autorización por escrito del demandante. Asumiendo la certeza de lo alegado en la demanda enmendada, procedía, por lo tanto, la acción de desahucio bajo las disposiciones del artículo 1459 del Código Civil.

■ Ahora bien, el artículo 1459 debe ser interpretado conjuntamente con el artículo 1077 del mismo cuerpo legal, que determina, en parte, que la facultad de resolver las obligaciones se entiende implícita en las obligaciones recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. En otras palabras, la acción de desahucio por incumplimiento de la condición prohibitoria de un subarriendo no autorizado, contenida en el contrato, equivale a una acción resolutoria del contrato, bajo el artículo 1077. 10 Manresa 647, 648, 5ta. ed; 24 Scaevola 605, 606: "la

acción de desahucio reviste un polimorfismo 'sui generis', que lo mismo se adapta a la resolución de un contrato de arrendamiento vigente, como a la desposesión material del arrendatario en un arrendamiento ya extinguido . . . la acción de desahucio retorna a su aspecto y a su naturaleza de resolutoria, por el incuestionable influjo del principio recogido en el artículo 1124, de que la facultad de resolver las obligaciones se entiende implícita en las recíprocas para el caso de que uno de los obligados no cumpliere lo que le incumbe".

Se trata, pues, de una acción resolutoria. En términos generales, la resolución de un contrato tiene un efecto retroactivo, pero ello no es así cuando el contrato envuelto es de tracto sucesivo, esto es, cuando la prestación ha de ser realizada en una serie de actos y no en un solo acto. Planiol y Ripert, Tratado Práctico de Derecho Civil Francés, sec. 433, pág. 607; De Buen y Bonet, Derecho Civil Común, pág. 467. El arrendamiento es un contrato sucesivo ya que la obligación que incumbe al arrendador, o sea, proporcionar al arrendatario el uso y el disfrute de la cosa, se cumple de modo continuado, sirviendo de causa a la obligación del arrendatario, de pagar el precio del alquiler, siendo tales pagos continuos y sucesivos, y siendo exigible el precio del arrendamiento en proporción al disfrute procurado. Planiol-Ripert, ob. cit., tomo 10, sec. 416, pág. 482. Una sentencia resolutoria no debe afectar retroactivamente distintos hechos o actos ya consumados, tratándose de contratos, como el de arrendamiento, que se refieren a actos y cumplimientos continuos, repetidos y sucesivos. Esos actos sucesivos deben seguir teniendo efectividad jurídica, dentro del término de vigencia del contrato, hasta tanto se dicte sentencia firme resolviendo el contrato.

No pudiendo tener efecto retroactivo una sentencia resolutoria de un contrato de arrendamiento, ello implica que desde que se otorgue el contrato, y aun después de haberse radicado una demanda de desahucio, sigue vigente el contrato de arrendamiento, de acuerdo con sus términos, y du-

rante el período de duración pactado en el contrato, hasta tanto se dicte y sea firme una sentencia resolviendo el contrato. En el período de tiempo comprendido entre la fecha de la radicación de la demanda y la fecha en que sea firme una sentencia que se dicte resolviendo el contrato, el arrendador está obligado a seguir permitiendo el disfrute de la cosa por el arrendatario y este último continúa obligado a pagar los cánones correspondientes. Por lo tanto, la aceptación por el arrendador de los cánones durante la tramitación y pendencia de la acción de desahucio en el caso que nos ocupa es un incidente de la relación contractual que sigue prevaleciendo y es compatible con la continuada existencia del vínculo arrendaticio, hasta tanto se dicte una sentencia resolutoria que sea firme. Tal recibo del pago de cánones no equivale, en sí y bajo las circunstancias del caso de autos, a una renuncia a la acción de desahucio ni a un reconocimiento implícito de la improcedencia de la acción resolutoria como una cuestión de derecho. El incumplimiento por el arrendatario de su obligación contractual de no subarrendar sin la debida autorización del arrendador, conlleva el derecho del arrendador a solicitar la resolución del contrato, y al ejercitar ese derecho, este último no debe estar, en términos generales, sometido a la penalidad de que el arrendatario disfrute la ventaja adicional de seguir en el disfrute de la cosa sin pagar canon o merced alguna.

En el caso de *Igartúa* v. *Ruiz*, supra, se resuelve que en una acción de desahucio basada en la falta de pago de los cánones convenidos, la aceptación por el arrendador de los cánones vencidos con posterioridad al quebrantamiento del contrato, equivale a una renuncia al derecho a desahuciar. Ese caso es distinguible del de autos. Si la causal que le sirve de base a la acción de desahucio es la falta de pago de los cánones, la aceptación del pago de los cánones equivale a un reconocimiento implícito de que la demanda de desahucio se basa en una causa falsa. 10 Manresa 644, 5ta. ed. Si la demanda se basa en el alegado hecho de que los cánones

no han sido pagados, el pago aceptado de los cánones destruye la base, y hace desvanecer la causa de la demanda. El hecho del pago es incompatible con el hecho alegado de la falta de pago. Se renuncia a la acción resolutoria porque desaparece la base en sí de la acción y no porque la aceptación del pago de los cánones le imprima nueva validez al contrato. El contrato siempre se mantiene en efecto hasta tanto se dicte una sentencia firme resolutoria pero, en una situación de falta de pago, la aceptación de los cánones impide el que se dicte una sentencia resolutoria, ya que no puede dictarse una sentencia basada en la falta de pago. Pero en el caso de autos no hay relación lógica alguna de dependencia entre el pago de los cánones y la alegada infracción del contrato, o sea, el subarriendo indebido.

Tampoco existe relación alguna entre el caso de autos y la situación envuelta en aquellos casos de desahucio en precario y por detentación en que se ha determinado que la compensación pagada por el disfrute de la propiedad equivale a un pago por el uso de ella, y no a un pago de cánones. *Torres* v. *Biaggi*, 72 D.P.R. 869, y otros casos citados en *Igartúa* v. *Ruiz*, supra, a la pág. 358. En esos casos de desahucio en precario y por detentación es obvio que ya no existía un contrato entre las partes cuando se hicieron los pagos, mientras que en el caso de autos los pagos se verificaron como un incidente de un contrato que continuaba existiendo. Naturalmente, aun en casos que no sean de desahucio en precario y por detentación, si la aceptación del dinero se lleva a cabo bajo tales circunstancias que, como cuestión de hecho, surja que el dinero se acepta como compensación por el uso y no como un alquiler, incidental a un contrato existente, tal aceptación de dinero no conllevaría una renuncia a la infracción anterior. Cf. *Igartúa* v. *Ruiz*, supra, a la pág. 358 y *Vélez* v. *San Miguel*, 68 D.P.R. 575, 583. Pero esa sería una cuestión de hecho a ser determinada a la luz de la prueba presentada. A los fines de la resolución de este caso, en su etapa actual, es suficiente el resolver exclu-

sivamente que, como cuestión de derecho, al alegarse un sub-arriendo no autorizado como infracción por el arrendatario de sus obligaciones, como base para el desahucio, el hecho aislado en sí de la aceptación de los cánones vencidos con posterioridad al alegado quebrantamiento, no equivale a una renuncia de la acción de desahucio.

Hemos señalado, como base de esta opinión, que una sentencia resolutoria de un contrato de arrendamiento no debe tener efecto retroactivo hasta el punto que elimine la vigencia del contrato durante la tramitación del litigio. En la sentencia del Tribunal Supremo de España de 29 de octubre de 1927, se resolvió que una sentencia declarando con lugar una demanda de desahucio basada en falta de pago equivalía a una rescisión del contrato, con efecto retroactivo, hasta el punto de hacer aplicable el art. 1295 del Código Civil de España, equivalente al 1247 nuestro, que determina, en parte, que la rescisión obliga a la devolución de las cosas que fueron objeto del contrato con sus frutos, y del precio con sus intereses. Se trataba de una acción de desahucio por falta de pago, y se resolvió que, el arrendatario contra quien se dictó la sentencia no tenía derecho a los frutos recolectados durante la tramitación del litigio. Pero ese dictamen ha sido duramente criticado por el entonces comentarista Castán, indicando el hoy magistrado del Tribunal Supremo de España que la citada sentencia es errónea, porque (1) una sentencia de desahucio conlleva una resolución, y no una rescisión, del contrato de arrendamiento y porque (2) la resolución del contrato por sentencia no es ni debe ser retroactiva. Indica lo siguiente Castán, con respecto a la sentencia mencionada, en la Revista de Derecho Privado, tomo 15, pág. 323:

"Mucho dudamos que haya acompañado el acierto a esta decisión y que puedan ser aceptadas las teorías jurídicas en que el Supremo ha fundamentado la revocación de un fallo inferior, quizá ajustado a derecho.

"Sentimos, en primer lugar, no estar de acuerdo con la tesis sustentada por nuestro más alto Tribunal de que, cumplidas por el arrendador sus obligaciones y no por el arrendatario las suyas, es patente que no procede la resolución, sino la rescisión del contrato. Es verdad que nuestro C. C., al igual que gran parte de los extranjeros, aplica una terminología muy confusa e imperfecta a las diversas especies de ineficacia de los contratos, y que, por esta causa, la jurisprudencia ha confundido muchas veces la rescisión con la resolución. Pero hora es ya de que las distingamos y les demos su exacto sentido, de acuerdo con las enseñanzas de la doctrina científica. La rescisión es una forma de ineficacia, motivada por la lesión o perjuicio que el contrato cause a los contratantes o a terceras personas. La resolución es la ineficacia debida a la voluntad informadora del contrato mismo, ya se manifieste esta voluntad expresamente (como en el caso de la condición resolutoria), ya tácitamente (como en el caso de la resolución judicial a virtud de incumplimiento del contrato por una de las partes). Cualesquiera que sean las denominaciones, no siempre propias, que adopte el legislador o empleen los contratantes, el rompimiento del contrato como consecuencia de su vulneración por una de las partes (haya sido o no previsto y autorizado expresamente por éstas) es, pues, un caso de resolución y no de rescisión. La hipótesis aludida por el art. 1.556 del C.C. ninguna relación guarda con la rescisión por lesión; y, en cambio, es innegable su parentesco con la resolución por incumplimiento de contrato bilateral. Como dice Manresa, dicho artículo 'contiene una evidente aplicación del principio del art. 1.124'. ¿No era, pues, lógico que el juzgador de instancia estimase suficiente relacionar la doctrina del citado art. 1.556 con la del repetido 1.124? La inaplicabilidad a los casos de resolución (o rescisión convencional, como algunas veces ha sido llamada) de los preceptos contenidos en el título del Código relativo a la rescisión de los contratos, está reconocida por el mismo T. S. La sentencia de 24 de abril de 1901 afirma que el art. 1.204, 'como los que le preceden y siguen, se refiere a los contratos rescindibles con arreglo a la ley, y no es aplicable a la rescisión de aquéllos en que los interesados, en uso de su voluntad soberana en esta materia, establecen una condición resolutoria, de cuyo cumplimiento depende la subsistencia del contrato'.

"Dejando aparte estas consideraciones de carácter sistemático, y sea o no verdadera rescisión la que con tal nombre de-

signa el art. 1.556, ¿puede admitirse el pleno efecto retroactivo que el Supremo en esta ocasión le atribuye? Infringido por cualquiera de las partes un contrato de arrendamiento (con cláusula expresa de resolución o sin ella), ¿se han de devolver, como quiere la actual sentencia, los frutos y las rentas (caso de haber sido éstas pagadas), volviendo las cosas al estado que tenían al celebrarse la convención? No lo creemos así. El carácter de contrato sucesivo que el arrendamiento tiene hace imposible aplicar a él la retroactividad absoluta que normalmente acompaña a la rescisión y a la resolución. ¿Cómo va a dejarse sin efecto el hecho material del goce de la cosa por el arrendatario? La jurisprudencia y la doctrina científica, en Francia e Italia, rechazan, sin vacilaciones, la anulación de los efectos del arrendamiento, por lo que se refiere al período anterior a la resolución. En nuestra misma Patria, son de igual opinión los comentaristas que llegan a darse cuenta del problema."

Castán cita de Colin y Capitant, Curso Elemental de Derecho Civil, edición especial, tomo 3, pág. 697, al efecto de que "cuando la resolución se aplica a contratos de tracto sucesivo como el arrendamiento, . . . ofrece el carácter específico de que, a diferencia de la resolución ordinaria, no produce efecto retroactivo. Por ejemplo, en casos de rescisión de un arrendamiento, las relaciones jurídicas de arrendador y arrendatario cesan para lo por venir, pero subsisten en lo pasado".

No estamos de acuerdo con la sentencia del Tribunal Supremo de España que ya hemos citado, y coincidimos con el criterio de Castán y Colin y Capitant. Una sentencia de desahucio por incumplimiento de los términos contractuales equivale a una resolución, y no a una rescisión del contrato, y tal resolución no tiene efecto retroactivo. Por lo tanto, como ya hemos indicado, el pago y aceptación de cánones vencidos con posterioridad al quebrantamiento del contrato constituyen un incidente del contrato de arrendamiento, que persiste en su vigencia hasta que se dicte sentencia firme resolviendo el contrato.

Actuó correctamente, por lo tanto, el tribunal a quo al declarar sin lugar la cuestión de derecho planteada por el arrendatario demandado.

*Debe anularse el auto expedido.*

Los Jueces Asociados Sres. Marrero, Negrón Fernández y Belaval no intervinieron.

El Juez Asociado Sr. Sifre concurre en el resultado.