HERMINIO FLORES RODRÍGUEZ, demandante y recurrente, *v.* PEDRO H. FLORES TOLEDO y VICENTE RODRÍGUEZ, demandados y recurridos.

*Número*: R-72-6      *Resuelto*: 23 de enero de 1973

*Edwin H. Flores Tirado, Víctor E. Báez* y *Enrique Báez García,* abogados del recurrente; *Hernán Longoria* y *Julio Irving Rodríguez Torres,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Se trata de una acción de desahucio iniciada por Herminio Flores Rodríguez, el propietario de una finca rústica radicada en el Barrio Laguna de Guánica, contra Pedro H. Flores Toledo, el arrendatario, y Vicente Rodríguez subarrendatario de la misma. El Tribunal Superior, Sala de Ponce, después de realizada la vista correspondiente, declaró sin lugar la demanda y condenó al demandante a pagar las costas y los gastos del pleito al demandado, más $500.00 para honorarios de abogado. Recurrió el demandante.

En la demanda de desahucio se alegaron tres causas para justificar la concesión del remedio solicitado: que los cánones de arrendamiento correspondientes a los meses de abril y mayo de 1971 no habían sido pagados; que el arrendatario, al momento de radicarse la demanda adeudaba al erario público las contribuciones sobre el inmueble de los últimos tres años, por lo que el inmueble fue embargado para el cobro de las mismas; y que el arrendatario removió del inmueble arrendado un establo y su equipo así como el techado de los bebe-

deros y comedores para ganado y los destruyó sin sustituirlos en forma alguna.

El contrato de arrendamiento se formalizó mediante la escritura número 158 de 30 de octubre de 1962, otorgada en Cabo Rojo, Puerto Rico, ante el Notario Público Don Raúl Ramos Torres. Comparecieron en dicha escritura el arrendador Herminio Flores Rodríguez, su entonces esposa Regina Cándida Toledo Rodríguez, y el arrendatario Pedro H. Flores Toledo quien es hijo de dichos esposos. Dispone el referido contrato, en lo que es aquí pertinente que:

".　　.　　.　　.　　.　　.　　.　　.

Es convenido que *si el arrendatario no satisficiese el canon correspondiente a dos mensualidades consecutivas en la forma ya estipulada,* o dejase de cumplir cualesquiera de los requisitos del presente contrato de arrendamiento, *se entenderá vencido el mismo como si hubiese llegado a su término, quedando en tal caso la parte arrendadora en aptitud de poder desahuciar al arrendatario,* sus herederos o cesionarios, sin más requerimiento o aviso, y sin derecho a indemnización por las mejoras que se hubieren introducido en la finca arrendada.

Las contribuciones territoriales impuestas o que se impongan sobre la finca arrendada, serán satisfechas por la parte arrendataria *durante el término del presente contrato de arrendamiento."* (Énfasis nuestro.)

En 31 de julio de 1964, e igualmente por escritura pública, las partes modificaron el referido contrato de arrendamiento para aumentar el canon a $4,800.00 anuales, pagaderos a razón de $400.00 mensuales, quedando subsistente en cuanto a todas las demás disposiciones.

El 31 de julio de 1964, en Cabo Rojo, Puerto Rico, mediante la escritura número 61 otorgada ante el Notario Público Amador Ramírez Silva, Herminio Flores Rodríguez y Regina Toledo Rodríguez liquidaron la sociedad de gananciales existente entre ellos adjudicándose al primero el inmueble objeto del arrendamiento. En la cláusula sexta de dicha escritura convinieron los otorgantes que ". . . si apareciesen

otros bienes o derechos correspondientes a la extinta sociedad de gananciales se dividirán y adjudicarán de por mitad para cada uno." ·

El 25 de marzo de 1954, Tomás López Silva y su esposa María D. González habían suscrito un pagaré por $2,000.00 a la orden de Herminio Flores Rodríguez. Los esposos López González habían abonado $1,000.00 a la deuda y no habían pagado los otros $1,000.00, por lo que Herminio Flores Rodríguez encomendó al Lic. Arcadio Toro Goyco el cobro del pagaré.

El Lic. Toro Goyco recobró, mediante reclamación judicial, un total de $2,742.00. (¹) Pagados los gastos incurridos y los honorarios del propio Lic. Toro Goyco el total se redujo a $1,800.00. El Lic. Toro Goyco recibió instrucciones de Herminio Flores Rodríguez de llevarle a Regina Cándida Toledo Rodríguez la suma de $900.00. Concluye el tribunal inferior a tal respecto que:

· "El Lic. Toro Goyco fue a la residencia de Regina Cándida Toledo Rodríguez con los $900.00, pero ella rehusó recibirlos diciéndole que lo llamaría. El. Lic. Toro Goyco se llevó el dinero y más tarde recibió una llamada en que Regina Cándida le informó que el dinero no le pertenecía, que correspondía a un pago de Herminio Flores Rodríguez. También habló con el Lic. Toro Goyco, Pedro H. Flores Toledo, quien le dijo que diera ese dinero a Herminio Flores Rodríguez porque estaba autorizado por Herminio Flores Rodríguez para descontarlo de los cánones de arrendamiento de la finca. El Lic. Toro Goyco fue a casa de Herminio Flores Rodríguez, no lo encontró y se llevó el dinero a su oficina.

Por instrucciones del Lic. Edwin H. Flores Tirado (²) el Lic. Toro Goyco depositó, en un sobre que selló (según él lacró) con cinta adhesiva o 'tape', los $900.00 en billetes de a .$100.00 y se

---

(¹) La sentencia en dicho pleito fue dictada en 30 de septiembre de 1970, en rebeldía, por èl Secretario del Tribunal de Distrito, Sala de Mayagüez.

(²) "También hijo del demandante, Herminio Flores Rodríguez, en su segunda esposa, y abogado de éste en el presente recurso.

Pedro H. Flores Toledo es administrador de los bienes de su madre, Regina Cándida Toledo Rodríguez."

los entregó al Lic. Flores Tirado, no sin antes hacer unas anotaciones en el sobre y ponerle un sello."

Concluyó, además, el tribunal que, para el 2 de julio de 1971, la finca arrendada por Herminio Flores Rodríguez a su hijo Pedro H. Flores Toledo adeudaba, por concepto de contribuciones sobre la propiedad de los años económicos 1968–69, 1969–70, 1970–71 y 1971–72 la suma total de $4,037.50. En el Registro de la Propiedad, Sección de San Germán, aparece una anotación de embargo a favor del Estado Libre Asociado de Puerto Rico para responder de $540.57 de contribuciones más $4,917 de recargos, más $35.00 de intereses; que los atrasos se debieron a problemas que tuvo el arrendatario con un subarrendatario anterior de la finca, quien no le pagó ni los cánones de subarriendo ni las contribuciones; que Flores Toledo había hecho promesa de pago al Colector de Rentas Internas de Guánica, Luciano Valentín Ortiz y que el 18 de octubre de 1971 pagó las contribuciones sobre la propiedad hasta el 30 de junio de 1972.

Como cuestión de derecho concluyó el tribunal inferior que: (1) en efecto el pago de los cánones correspondientes a los meses de abril y mayo de 1971 se había realizado, pues para la fecha en que se interpone la demanda (8 de junio de 1971) ya se había manifestado la intención de ". . . dejarle ese dinero [los $900.00 correspondientes a Regina Cándida Toledo] al demandante para abonarlo a los cánones de arrendamiento que venía obligado a pagar el demandado"; (2) no hay incumplimiento o infracción a las condiciones pactadas, ya que las contribuciones fueron satisfechas durante el término de contrato tal y como se acordó por las partes; y (3) que el retiro del establo realizado por el demandado no ocasionó detrimento alguno a la cosa arrendada.

No creemos necesario considerar la cuestión de si hubo o no una efectiva compensación de los créditos correspondientes a los dos meses de rentas adeudadas y el producto de la donación que le hizo la madre del arrendatario a éste ($900) para

que pagase tal renta adeudada. Basta con concluir que el desahucio debió proceder por el no pago a tiempo de las contribuciones.

Antes de exponer los fundamentos en apoyo de la anterior conclusión es necesario aclarar las siguientes cuestiones:

*Aplicación de la Ley de Alquileres Razonables*

■ Fue pactado por las partes que a partir del 1ro. de agosto de 1964, el canon mensual de arrendamiento sería—y es en la actualidad—de $400.00 mensuales, por lo que, independientemente de si se trata de una vivienda o negocio o ambas cosas, o de una finca urbana o rústica, no le es aplicable la Ley de Alquileres Razonables. Véanse 17 L.P.R.A. secs. 184 y 212; *Pons* v. *Dir. Adm. S. Consumidor*, 99 D.P.R. 551 (1971).

*Procedencia del desahucio por la vía sumaria fundado en el no pago de las contribuciones en violación del contrato.*

Dispone el Art. 621 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 2822) que:

"Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas, puestos por el propietario en sus fincas, y cualquiera otra persona que detente la posesión material o disfrute, precariamente, sin pagar canon o merced alguna."

Los Arts. 628 y 631 del mismo cuerpo legal (32 L.P.R.A. secs. 2829 y 2832) hacen referencia, además, a la falta de pago como causal de desahucio.

Hemos resuelto que procede el desahucio contra un arrendatario por la vía sumaria por una causa distinta a la falta de pago, no obstante que tal es la causa específica a que hace referencia la ley de desahucio.

■ En adición a la Ley de Desahucio dos cuerpos legales establecen causales para dicho remedio en nuestra jurisdicción: el Código Civil (Art. 1459, 31 L.P.R.A. sec. 4066) y la Ley de Alquileres Razonables (Art. 12A, 17 L.P.R.A. sec. 193, Suplemento). Se ha reconocido la procedencia del desahucio

por la vía sumaria en acciones fundadas en causales de ambos cuerpos legales. Véanse: *Campos* v. *Tribunal Superior*, 75 D.P.R. 370 (1953), *Veve et al.* v. *Fajardo S. G. Association*, 18 D.P.R. 282 (1912).

Ahora bien, en *Veve*, supra, a las págs. 297–298, se cita con aprobación al Tribunal Supremo de España a los efectos de que:

". . . establecido el juicio de desahucio como procedimiento de reintegrar al dueño de una finca en el pleno ejercicio de sus derechos dominicales, cuando el arrendatario falta abierta y conocidamente a las obligaciones del contrato o cuando haya expirado su término, es preciso, según reiterada doctrina del expresado Tribunal, para el éxito de la acción, que sean de tal naturaleza las relaciones entre arrendador y arrendatario, que se compruebe claramente en el juicio la infracción de las obligaciones pactadas, ya con relación al pago del precio o merced estipulada, ya respecto de cualquier otra obligación relativa a la manera de llevarse la finca arrendada, pues cuando las obligaciones respectivas son de tal naturaleza o tan especiales o tan complejas que no sea racionalmente posible apreciar con exactitud su finalidad y trascendencia, se convertiría el procedimiento sumario del juicio de desahucio en un medio de obtener con cierta violencia la rescisión de un contrato sin las garantías de defensa e información que ofrecen los juicios declarativos.

". . . la acción de desahucio sólo es procedente cuando entre el arrendatario y el arrendador o el dueño de la finca y quien la lleva en precario no existen más relaciones jurídicas que los derivados de dicho carácter, y cuando acerca de ellas no existen dudas fundadas que requieran un examen y discusión propios solamente del juicio declarativo correspondiente."

A los mismos efectos véanse *Andino* v. *Canales*, 27 D.P.R. 281 (1919); *Carrillo* v. *Alejandrino*, 32 D.P.R. 437 (1923); *Pueblo* v. *Georgetti & Co. Ltd.*, 46 D.P.R. 61 (1934).

Los casos citados, sin embargo, tratan situaciones en que han surgido conflictos de título o derechos de terceros que no son partes en el pleito de desahucio. Aquí, por el contrario, se trata de una acción de desahucio cuya causal tiene un origen contractual y que puede dirimirse con la mera interpre-

tación del contrato. Cabe citar a este respecto el caso de *Saldaña* v. *L. Rinaldi & Co.*, 15 D.P.R. 133 (1909), en el cual se establece, citando con aprobación al Tribunal Supremo de España, que:

"Las declaraciones referentes a si han sido o no infringidas las condiciones estipuladas en los contratos, deben hacerse, por regla general, en los juicios que llevan el nombre de declarativos, para poder ventilar su razón y fundamento sin que, . . . , hayan de producirse en los sumarios, como el de desahucio, sino en casos especiales en que el dolo, culpa o negligencia del arrendatario, hagan tan evidente la infracción por éste cometida, que se imponga como necesidad perentoria e ineludible la reintegración al propietario de sus derechos."

Hay que preguntarse si ha habido aquí tal negligencia de parte del arrendatario que se justifique en este procedimiento sumario la restitución de sus derechos al propietario. Como cuestión preliminar es preciso determinar también si ha habido incumplimiento de contrato.

La disposición contractual envuelta es la que dispone que las contribuciones territoriales serán satisfechas por el arrendatario ". . . durante el término del presente contrato de arrendamiento."

El tribunal de instancia entendió que, en vista de que las contribuciones se pagaron antes del vencimiento del contrato, no hubo incumplimiento alguno de la cláusula. Alega el apelante que dichas contribuciones, para cumplir con los términos del contrato, debieron pagarse de conformidad con el Art. 330 del Código Político (13 L.P.R.A. sec. 476).([3])

La disposición contractual citada puede interpretarse en el sentido de que otorga al arrendatario un plazo contractual para el pago de las contribuciones—interpretación que le dio

---

([3]) Dispone en parte dicho artículo que:

"Las contribuciones impuestas sobre el valor de los bienes muebles e inmuebles serán pagaderas semestralmente por adelantado, el día primero de julio y de enero de cada año. Dichas contribuciones se convertirán en morosas si no se satisfacen dentro de los noventa (90) días después de la fecha en que las mismas se vencieron. . . ."

el tribunal a quo—o de que fija, no el plazo para el pago, sino la extensión temporal de la responsabilidad del arrendatario. Entendemos que la interpretación correcta es la segunda, pues la primera llevaría al absurdo de que el arrendatario podría dejar acumular las contribuciones de los diez años del término contractual, con el subsiguiente embargo y ejecución de la finca por el Estado Libre Asociado, sin incurrir en una violación del contrato. El Art. 1239 del Código Civil (31 L.P.R.A. sec. 3477) dispone que:

"el uso o la costumbre del país se tendrán en cuenta para interpretar las ambigüedades de los contratos, supliendo en éstos la omisión de cláusulas que de ordinario suelen establecerse."

Trátase aquí de una práctica que no surge del uso o la costumbre sino de la ley. Pero también la ley puede servir, existiendo omisiones o intención confusa de los contratantes, de base supletoria para la interpretación de los contratos. Véase Manresa, *Comentarios al Código Civil Español*, Tomo VIII, Vol. II, págs. 534–535.

Concluimos que se incumplió el contrato al no pagarse las contribuciones territoriales de conformidad con el Art. 330 del Código Político, supra.

El incumplimiento, además, ha sido evidente y negligentemente causado por el arrendatario. Ha dejado acumular cuatro años de contribuciones sin pagar, ha provocado un embargo poniendo al propietario en riesgo de perder su propiedad. Cierto es que el pago fue realizado en definitiva, pero al realizarse hacía más de cuatro meses que se había radicado la demanda y unos tres meses que se había contestado la misma y nada se alegó en la contestación con respecto al no pago de las contribuciones, de manera que en derecho tal alegación de la demanda se aceptó.

El hecho del pago así realizado, además, no puede entenderse que derrota la acción de desahucio. No constituye una renuncia, pues no es el arrendatario sino el Colector quien

acepta el pago. El pago no se ofreció al demandante ni se consignó. El hecho de que el demandante no hiciese expresión alguna o que no tomase medida otra alguna en relación con dicho pago, el cual no estaba en condiciones de evitar o impedir, no puede tener el efecto en derecho de una renuncia a su acción de desahucio. Véanse: *Igartúa* v. *Ruiz*, 73 D.P.R. 354 (1952); *Campos* v. *Tribunal Superior*, 75 D.P.R. 370 (1953).

■ Debe concluirse que, al no pagar las contribuciones conforme a las disposiciones del Código Político, Art. 330, *supra*, dejando acumular las mismas durante cuatro años y ocasionando el embargo de la propiedad, el demandado incurrió en incumplimiento del contrato de arrendamiento que, conforme a las cláusulas del mismo, da lugar a su resolución. *Deberá revocarse la sentencia y decretarse el desahucio de los demandados.*

El Juez Asociado, Señor Martín, concurre en el resultado.