# 99 DTA 170

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**
**PANEL I**

DIEGO HUMBERTO COLON CARMONA Y CARMEN DELIA GARCIA COLON, POR SI Y EN REPRESENTACION DE LA SOCIEDAD DE GANANCIALES QUE AMBOS COMPONEN
Apelantes

v.

WILLIAM ANTONIO COLON CARMONA,
EDNA MILAGROS APONTE ZAYAS, ET ALS.
Apelados

Núm. KLAN-98-00144

San Juan, Puerto Rico, a 17 de mayo de 1999

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Pesante Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

Los apelantes, Diego H. Colón Carmona, Carmen D. García Colón y la Sociedad de Bienes Gananciales compuesta por ambos, solicitan la revocación de la sentencia dictada el 17 de diciembre de 1997 por el Tribunal de Primera Instancia, Sala Superior de Guayama. Mediante el dictamen en cuestión, el Tribunal desestimó una demanda de desahucio por incumplimiento de un contrato de arrendamiento incoada por los apelantes contra los apelados, William A. Colón Carmona, Edna M. Aponte Zayas y la Sociedad de Bienes Gananciales por ellos compuesta.

El Tribunal también impuso a los apelantes una condena de $300.00 por concepto de honorarios de abogado, por temeridad.

Revocamos.

### II

Según surge de los autos, los apelantes son casados entre sí y residentes de Cayey. El apelante Diego Colón Carmona es hermano del apelado William Colón Carmona, quien está casado con la apelada Edna Aponte Zayas. Esta última pareja también reside en Cayey.

Para la época relevante a la presente controversia, los apelantes eran dueños de un negocio de venta de piezas de automóvil llamado Apolo Auto Parts *("Apolo")*. Los apelantes habían fundado dicho negocio para 1974 o 1975 y lo habían administrado por espacio de 15 años, desarrollando una clientela para las piezas que vendían.

En el 1990 los apelantes contemplaban mudarse al estado de la Florida y optaron por arrendar su negocio a William Colón Carmona, hermano de Diego. Se otorgó un contrato de arrendamiento, fijándose cánones de

arrendamiento separados por el negocio en marcha y por el local. El canon de arrendamiento por el negocio fue de cuatro mil dólares ($4,000.00) mensuales, mientras que el del local fue de mil dólares ($1,000.00) mensuales. Los apelados se comprometieron a mantener empleada en el negocio a la hija de los apelantes, Elisa N. Colón García, como empleada a tiempo parcial. El contrato de arrendamiento tenía una duración de cinco años.

Otorgado el contrato, los apelados pasaron a ocupar el negocio y a administrar el mismo, lo que se mantuvieron realizando por los próximos años. Las relaciones entre las partes durante este tiempo se mantuvieron cordiales. Los apelantes tenían acceso a los libros del negocio, entraban a la oficina del mismo, dialogaban con clientes y vendedores, y se aseguraban que el negocio estuviese funcionando según lo acordado.

Transcurrido el término de arrendamiento pactado, las partes decidieron renovar el mismo y otorgaron un nuevo contrato el 29 de diciembre de 1995. La escritura otorgada reflejaba que las partes habían convenido en el *"[a]rrendamiento del negocio en marcha conocido como 'Apolo Auto Parts' y el local donde ubica el mismo"*.

El término del nuevo contrato, al igual que el del contrato anterior, era por cinco (5) años. Se determinó aumentar el canon de arrendamiento a cuatro mil seiscientos dólares ($4,600.00) mensuales por el negocio en marcha y mil ciento cincuenta dólares ($1,150.00) mensuales por el local.

El contrato indicaba que los arrendadores habían recibido la propiedad arrendada, incluyendo *"equipos, inventario de piezas, obligaciones y deudas, las cuales se comprometen a seguir pagando diligentemente, tanto las existentes como las futuras."* En su cláusula Doce se añadía que la mitad del inventario y deudas del negocio pasarían a ser propiedad de los arrendatarios una vez se saldaran dos préstamos existentes con el Banco Popular de Puerto Rico, identificados en la escritura.

La cláusula Siete del Contrato expresaba:

*"Los Arrendatarios no podrán ceder, traspasar ni sub-arrendar en todo ni en parte, el negocio objeto de este arrendamiento sin el previo consentimiento escrito de los Arrendadores, ni podrán usar la propiedad para otros fines que no sean los mismos a que está destinado."*

La cláusula Cinco disponía que los Arrendadores podrían *"asumir el control del negocio objeto de ese contrato y resolver el mismo si por actuaciones de los Arrendatarios y/o sus representantes en el manejo de las operaciones de dicho negocio, pusieran en peligro [la] salud económica del mismo."*

Los apelados se comprometieron a mantener empleada a la hija de los apelantes.

Luego de la renovación del contrato, comenzaron a desarrollarse serias fricciones entre las partes. Alegadamente, en o cerca de febrero de 1996, los apelados despidieron a la hija de los apelantes, Elisa Colón, contrario a lo que se había estipulado en la cláusula Diez del contrato. Esta última se quejaba de que, aunque tenía experiencia haciendo trabajo de cajera, marcando piezas y ayudando en el registro de notas en los libros, cuando iba a trabajar la ignoraban *"como si fuera una estatua"* y no le querían dar tareas.

Por su parte, los apelados alegaron que no habían despedido a la hija de los apelantes sino que ésta estaba embarazada y abandonó el negocio para dar a luz, según le aconsejara la apelada Edna Aponte, quien le manifestó a la primera que estando encinta no le convenía trabajar. Los apelados, sin embargo, no volvieron a contratar a la hija de los apelantes luego de que ésta se repusiera de su embarazo.

También se desarrollaron fricciones por la adquisición de los apelados de un nuevo negocio de piezas de automóvil, situado a aproximadamente dos kilómetros de distancia de Apolo Auto Parts. Según su versión de los

hechos, el apelado William Colón invitó a su hermano, el apelante Diego Colón, a que se uniera a él para adquirir y operar el nuevo negocio, pero el apelante se negó.

Los apelados adquirieron el negocio, llamado *"Unipiezas Willie"*, supuestamente para evitar que les hiciera competencia. El nuevo negocio fue inaugurado en mayo de 1996, pocos meses luego del despido de la hija de los apelantes. Según las determinaciones del Tribunal de Primera Instancia, luego de adquirir el mismo, los apelados removieron parte del inventario de Apolo Auto Parts y lo trasladaron al nuevo negocio. Además, los apelados adquirieron más mercancía (piezas y accesorios de automóvil), *"la cual le[s] fue entregada por sus suplidores en el nuevo negocio y en el 'Apolo Auto Part' y de ahí trasladada al nuevo negocio."* Los apelados pagaron por el inventario.

Supuestamente, los apelados también utilizaron empleados de Apolo Auto Parts para asistir en las gestiones del nuevo negocio.

Según su testimonio, el apelante Diego Colón se percató de la disminución del inventario durante sus visitas a Apolo Auto Parts. Al investigar se percató de que el movimiento de inventario había sido *"en gran escala"* y que afectaba el negocio. Según le comunicaron los empleados de Apolo, los apelados *"fueron desmantelando, sacando piezas tablilla por tablilla, anaquel por anaquel de todo lo que se compone Apolo Auto Parts".* También sacaron piezas del almacén.

Ante esta situación, el apelante Diego Colón, quien acostumbraba visitar el negocio, reclamó examinar los libros de Apolo Auto Parts. Los apelados se negaron y cambiaron el candado del negocio para evitar que el apelante tuviera acceso al mismo.

Las partes intentaron resolver sus diferencias, pero al no rendir fruto alguno sus negociaciones, los apelantes procedieron a incoar la presente acción de desahucio ante el Tribunal de Primera Instancia contra los apelados, alegando que éstos habían violado el contrato, al transferir el inventario del Apolo Auto Parts al nuevo negocio de los apelados.

Los apelados contestaron la demanda, negando las alegaciones. Plantearon que la transferencia de las piezas no afectaba a Apolo Auto Parts y que los apelados habían advenido a ser dueños de la mitad del inventario de Apolo Auto Parts, conforme se había contemplado mediante la cláusula Doce del Contrato.

Luego de otros incidentes, se celebró la vista en su fondo. Ambas partes presentaron evidencia testifical y documental en apoyo de sus respectivas contenciones.

El 17 de diciembre de 1997, a base de la prueba recibida, el Tribunal de Primer Instancia emitió la sentencia apelada, declarando sin lugar la demanda.

En su sentencia el Tribunal concluyó que los apelantes no habían establecido que los apelados incumplieran las condiciones de su contrato de arrendamiento. Determinó que los apelantes no habían probado que su hija hubiera sido despedida por los apelados:

*"Si bien es cierto que en el contrato vigente se pactó que los demandados mantendrían trabajando en el negocio "part time" a doña Elisa S. Colón, hija de los demandantes, la realidad es que ésta estaba embarazada y dejó el empleo. De la prueba presentada y creída no se desprende que ella fuera despedida, sí que fue exhortada por la esposa del demandado, allá para febrero de 1997, un mes antes del alumbramiento a que estando ella encinta no le convenía trabajar y le expresó que un "Auto Parts" no era un lugar donde ella debía estar. Nunca se le dio carta de despido."*

El Tribunal también consideró la contención de los apelantes de que el traslado del inventario de piezas de Apolo Auto Parts al nuevo negocio de los apelados era contrario al contrato entre las partes. Concluyó que aunque la prueba había reflejado que dicho traslado había ocurrido, dicho traslado no era contrario al contrato, expresando:

*"Una lectura del contrato de arrendamiento vigente no evidencia que existiese un pacto contractual que impidiese a los Arrendatarios establecer un negocio similar al arrendado, es decir a "Apolo Auto Parts". Tampoco se produjo prueba alguna tendente a probar que el establecimiento de un nuevo negocio de "auto parts" por los demandados violentare las cláusulas del contrato, en particular a que afectare la salud económica de "Apolo Auto Parts". Dicho negocio queda distante del lugar donde opera "Apolo Auto Parts", aproximadamente dos kilómetros a dos kilómetros y medio. "Apolo Auto Parts" opera dentro del pueblo de Cayey y "Willy Auto Parts" opera casi frente a la intersección de la Autopista."*

Más adelante en su sentencia, el Tribunal rechazó que el traslado del inventario violase la cláusula Siete del Contrato de Arrendamiento:

*"La cosa arrendada es el local donde opera el negocio en marcha y el negocio en sí. Conforme a las cláusulas del contrato de arrendamiento, la parte demandada advino a ser dueño de la mitad del inventario y de la mitad de las deudas. No existe alegación alguna que impute que dicho local esté desmereciendo. El establecimiento de un negocio similar por la parte demandada no conlleva el desmerecimiento del local dado en arrendamiento, como tampoco el que venda todo o parte del inventario en el curso normal de los negocios, constituye violación a la referida cláusula."*

El Tribunal desestimó la demanda de desahucio e impuso a la parte apelante una condena de $300.00 por concepto de honorarios de abogado, por temeridad.

Insatisfechos, los apelantes acudieron ante este Tribunal.

### III

En su recurso, los apelantes plantean la comisión de varios errores por parte del Tribunal de Primera Instancia. Alegan, en síntesis, que el Tribunal erró al desestimar la acción de desahucio, a pesar de que la prueba estableció que los apelados violaron el contrato de arrendamiento al transferir parte del inventario de Apolo Auto Parts a Unipiezas Willie. También se imputa que erró la sala sentenciadora al determinar que la Sra. Elsa N. Colón no fue despedida de su empleo, sino que ésta lo dejó voluntariamente por estar embarazada y próxima a dar a luz.

El contrato de arrendamiento entre las partes requería que los apelados destinaran la cosa arrendada al uso pactado. 31 L.P.R.A. sec. 4052. El incumplimiento por los apelados de las condiciones del contrato da base a una acción de desahucio. 31 L.P.R.A. sec. 4066; *Mora Dev. Corp. v. Sandín,* 118 D.P.R. 733, 741 (1987); *Flores v. Flores Toledo,* 101 D.P.R. 61, 69-70 (1973); *Campos v. Tribunal Superior,* 75 D.P.R. 370, 375 (1953).

Las partes estipularon expresamente que los apelantes podían resolver el contrato *"si por actuaciones de los Arrendatarios y/o sus representantes en el manejo de las operaciones de dicho negocio, pusieran en peligro [la] salud económica del mismo."* Esta no es otra que la facultad que concede el art. 1077 del Código Civil de resolver las obligaciones recíprocas cuando una parte ha incumplido su parte de un contrato. 31 L.P.R.A. sec. 3052; *Mattei Nazario v. Vélez & Assoc.,* ___ D.P.R. ___ (1998), **98 J.T.S. 55,** a la pág. 922; *Neca Mortgage Corporation v. A & W Developers, S.E.,* ___ D.P.R. ___ (1995), **95 J.T.S. 10,** a la pág. 605; *Levy v. Autoridad de Edificios Públicos,* ___ D.P.R. ___ (1994), **94 J.T.S. 32,** a la pág. 11,630.

En la situación de autos, las partes habían acordado que los apelados no podrían *"ceder [ni] traspasar ...en todo ni en parte, el negocio objeto de este arrendamiento sin el previo consentimiento escrito de los Arrendadores",* y que no podrían *"usar la propiedad para otros fines que no sean los mismos a que está destinado."*

No existe controversia alguna, sin embargo, que los apelados transfirieron una parte del inventario de Apolo Auto Parts a su nuevo negocio, sin obtener el consentimiento de los apelantes. Coincidimos con la parte apelante en que dicha actuación de los apelados constituyó una infracción a la cláusula citada.

En efecto, no cabe duda que los apelados arrendaron a los apelantes el *"negocio en marcha"* de Apolo Auto Parts, así como el local donde ubicaba el mismo. Dicho negocio incluia el inventario de piezas, el cual no podía ser *"cedido"* o *"traspasado"* por lo apelados, sin el consentimiento de los apelantes.

El Tribunal de Primera Instancia entendió que la transferencia del inventario no era lesiva a los apelantes, toda vez que los apelados habían pagado por el mismo, se había estipulado que los apelados se convertirían en propietarios de la mitad del inventario una vez se saldaran las deudas con el Banco, y porque los apelantes no establecieron el perjuicio económico directo que esto les ocasionaba.

Lo cierto es, sin embargo, que el inventario formaba parte del negocio en marcha de Apolo Auto Parts el cual no podía ser traspasado sin el consentimiento de los apelantes. El valor de la cosa arrendada en este tipo de negocios no se limita al valor del inventario en un momento dado el cual fluctúa de acuerdo a las ventas y que, de ordinario, es pagado por la persona que esté administrando el negocio.

El elemento más valioso en este tipo de negocio a menudo lo constituye el elemento intangible de su plusvalía, la que está asociada a la *"buena voluntad"* o *"goodwill"*, esto es, la creación de una reputación y nombre en el mercado, que propicia que los clientes regresen al mismo lugar a realizar transacciones futuras. Este elemento de un negocio en marcha, a menudo designado como *"la llave"*, es distinguible de su inventario y del local en que esté ubicado. Compárese, e.g., 10 L.P.R.A. sec. 278b (enumerando elementos para la fijación de daños en casos de terminación de los contratos de distribución).

En la situación de autos, el canon de arrendamiento fijado por las partes para el negocio en marcha era cuatro (4) veces mayor que el estipulado para el arrendamiento del local, lo que refleja la importancia de que se mantuviera la integridad del negocio y se asegurara su continuidad.

La transferencia del inventario a las facilidades de un competidor, si bien no menoscababa directamente el interés de los apelantes, quienes no habían pagado por estas piezas, sí afectaba adversamente la plusvalía del negocio de piezas de los apelantes. Resultan, en este sentido, poco persuasivas las expresiones del Tribunal de Primera Instancia de que dicha competencia no afectaría a Apolo Auto Parts, porque el nuevo negocio de los apelados estaba situado a más de dos kilómetros de distancia.

Tampoco estimamos razonable la exigencia del Tribunal de que los apelantes presentaran prueba sobre una pérdida económica directa. Según surge de la relación anterior, los apelantes habían dejado de administrar el negocio desde hacía varios años. A consecuencia de las fricciones entre las partes, los apelados tampoco les permitían acceso a los libros del negocio. En cualquier caso, la lesión principal sufrida, según hemos indicado, era a la plusvalía y continuidad del negocio, lo que no se refleja fácilmente en una sola partida.

Los apelantes también se quejan de que los apelados incumplieron su compromiso de mantener empleada a su hija, la Sra. Elisa Colón. No existe controversia, en este sentido, que dicha parte fue exhortada por los apelados a abandonar su empleo cuando estaba embarazada y que éstos no la repusieron en su plaza, al concluir

el embarazo.

Dicha actuación resulta contraria a lo pactado en el contrato de arrendamiento.

La norma en nuestra jurisdicción es que las apreciaciones y determinaciones de hechos que haga un tribunal de instancia merecen gran deferencia por parte del tribunal apelativo y que las mismas no deben ser alteradas, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Monllor Arzola v. Sociedad Legal de Gananciales*, ___ D.P.R. ___ (1998), **98 J.T.S. 77**, a la pág. 963; *Sepúlveda Rivas v. Departamento de Salud*, ___ D.P.R ___ (1998), **98 J.T.S. 59**, a la pág. 949; *Garriga v. Condominio Marbella del Caribe Oeste*, ___ D.P.R. ___ (1997), **97 J.T.S. 129**, n.2 a la pág. 131; *Méndez de Rodríguez v. Morales Medina*, ___ D.P.R. ___ (1996), **96 J.T.S. 149**, a la pág. 347; *Levy v. Autoridad de Edificios Públicos*, ___ D.P.R. ___ (1994), **94 J.T.S. 32**, a la pág. 11,632.

Sin embargo, aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto ni goza una apreciación errónea de la prueba de credenciales de inmunidad frente a la función revisora de este Tribunal. *Méndez de Rodríguez v. Morales Molina*, **96 J.T.S. 149**, a la pág. 347; *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987).

Cuando de un análisis de la totalidad de la evidencia este Tribunal queda convencido que se cometió un error, como en el presente caso, y que las conclusiones del Tribunal de Primera Instancia están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, habremos de intervenir para corregir el mismo. *Méndez de Rodríguez v. Morales Medina*, **96 J.T.S. 49**, a la pág. 347; *Abudo Servera v. A.T.P. R.*, 105 D.P.R. 728, 731 (1977).

En la situación de autos, la determinación del Tribunal de que los apelados no incumplieron con el contrato de arrendamiento descansa en la interpretación realizada por dicho foro de la Escritura otorgada por las partes el 29 de diciembre de 1995. En la evaluación de dicho documento, estamos en idéntica posición a la del Tribunal de Primera Instancia. *Sepúlveda Rivas v. Departamento de Salud*, **98 J.T.S. 59**, n.13, a la pág. 953.

Resolvemos que erró el Tribunal de Primera Instancia en su determinación de desestimar la demanda de desahucio incoada por los apelantes.

Por los fundamentos expresados, se revoca la sentencia apelada. En su lugar, se dicta otra declarando con lugar la demanda.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General