Fraticelli Torres, Jueza Ponente
*1052 TEXTO COMPLETO DE LA SENTENCIA
Los apelantes, José A. Betancourt Sieres, Teresa E. Buscaglia Suárez y la sociedad legal de gananciales compuesta por ambos nos solicitan que revisemos una sentencia sumaria parcial dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Luis G. Quiñones Martínez, J.), mediante la cual dicho foro les impuso el pago de $18,000 por concepto de cánones adeudados por el arrendamiento de un inmueble, más costas y honorarios de abogado. Alegan los apelantes que una sentencia de désahucio emitida previamente por el ■ Tribunal de Primera Instancia, Sala Superior de Guaynabo, entre las mismas partes y sobre el mismo contrato de arrendamiento, constituia cosa juzgada, en su modalidad de impedimento colateral por sentencia.
Los apelantes señalan que erró el Tribunal de Primera Instancia: (1) al dictar la sentencia sumaria parcial en el caso por incumplimiento de contrato sin entrar a un juicio plenario y a pesar de existir controversia de hechos en cuanto a la validez, eficacia y existencia del contrato de arrendamiento; y (2) al ordenar a la parte demandada a pagar $18,000 por cánones de arrendamiento adeudados y vencidos.
Luego de examinar los escritos de ambas partes, resolvemos expedir el auto y revocar la determinación judicial recurrida.
I
Antes de evaluar la solicitud del recurso en sus méritos, debemos considerar una cuestión prioritaria que atañe a la naturaleza del recurso incoado ante nos.
La Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.5, permitía al Tribunal de Primera Instancia dictar la sentencia parcial final en este caso, porque se cumplen los criterios esbozados por la jurisprudencia para ello: primero, el caso presenta varias reclamaciones entre las partes; segundo, algunas de esas reclamaciones, derechos u obligaciones, pueden adjudicarse anticipadamente respecto a algunas de las partes. Pero, para darle efecto de finalidad a dicho dictamen, la Regla 43.5 requiere una certificación del Tribunal de Primera Instancia que exprese que no existe razón para posponer la sentencia parcial hasta la resolución total del pleito. También requiere que se ordene que dicho dictamen se registre y notifique. De este modo, todas las partes conocerán de su derecho a apelar del dictamen, según requerido en Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33, 36 y ss. (1982), y Medio Mundo v. Rivera, res. el 8 de junio de 2001, 154 D.P.R. _, 2001 J.T.S. 88, a la pág. 1387.
A base de lo indicado, para tener el carácter final de una sentencia, la determinación judicial apelada tenía que cumplir los criterios requeridos por la doctrina legal reiterada por el Tribunal Supremo de Puerto Rico al interpretar las Reglas 43.5 y 53.1 (g)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.5, R. 53.1 (g)(1). Medio Mundo v. Rivera, id.; Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 651-52, 658 (1987); First Fed. Savs. *1053 v. Nazario et als., 138 D.P.R. 872, 877 (1995); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 26 (1986). Sólo después de cumplir esos requisitos, podrán los tribunales denominar ese tipo de decisión como “sentencia parcial final”. U.S. Fire Ins. Co. v. A.E.E., res. el 13 de septiembre de 2000, 151 D.P.R. _ (2000), 2000 J.T.S. 146, a la pág. 92.
Al evaluar la sentencia apelada, nos percatamos de que carece de la certificación de finalidad que exige la Regla 43.5 de Procedimiento Civil. No concluye expresamente que no existe razón para posponer el dictar sentencia sobre el incumplimiento del contrato y el pago de los cánones adeudados. Dicha certificación es la que obliga a la parte perdidosa a apelar en el plazo prescrito por las reglas, para evitar que la determinación judicial advenga final y firme. Figueroa v. Del Rosario, 147 D.P.R. 126, 127 (1998); Torres Capeles v. Rivera Alejandro, 143 D.P.R. 300, 311-12 (1997); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. a las págs. 26-27; Dumont v. Inmobiliaria Estado, Inc., 113 D.P.R. 406, 415-16 (1982); Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33, 36 (1982); Gorbea v. Tribunal Superior, 104 D.P.R. 138, 144 (1975); Torres Torres v. Tribunal Superior, 101 D.P.R. 277, 278 (1973); Sánchez v. Municipio de Cayey, 94 D.P.R. 92, 98 (1967); y Dalmau v. Quiñones, 78 D.P.R. 551, 555-56 (1955).
La doctrina legal reiterada por el Tribunal Supremo de Puerto Rico es clara y contundente. Ante la falta de la fórmula textual, casi sacramental, que requiere la Regla 43.5, —“que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito” — , no podemos considerar la sentencia parcial apelada como sentencia final.
Se nos requiere celo en la protección de nuestra jurisdicción. Cuando la denominada “sentencia parcial” carece de la requerida certificación de finalidad, estamos realmente ante una resolución interlocutoria, que no podemos revisar por medio del recurso de apelación. Carattini v. Collazo Syst. Analysis, Inc., res. el 3 de enero de 2003, 158 D.P.R. _ (2003); 2003 J.T.S. 4, a la pág. 387; Juliá Padró v. Vidal, S.E., res. el 14 de febrero de 2001, 153 D.P.R._ (2001); 2001 J.T.S. 18; Pérez Marrero v. C.R. Jiménez, Inc., 148 D.P.R. 153, 154 (1999); Pueblo v. Santana Rodríguez, 148 D.P.R. 400, 402 (1999). Nada impide, sin embargo, que acojamos este recurso como una petición de certiorari. Cárdenas Maxán v. Rodríguez, 119 D.P.R. a la pág. 660.
II
En abril de 2003, los recurridos, Hiram Inserni Castillo, Margarita Ortiz y la sociedad legal de gananciales compuesta por ambos, presentaron una demanda por incumplimiento de contrato contra los esposos Betancourt-Buscaglia ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. Alegaron que, como arrendadores, habían suscrito con éstos un contrato de arrendamiento sobre un inmueble en la Urbanización Parkville de Guaynabo, por un canon mensual de $900; que el término de dicho contrato era de dos años, (del 15 de octubre de 2002 al 15 de octubre de 2004); que, a pesar de no haber vencido aún el contrato, los esposos Betancourt-Buscaglia les informaron el 15 de marzo de 2003 que lo daban por terminado y, a partir de esa fecha, dejaron de pagar los cánones correspondientes a los meses de marzo y abril; sin embargo, permanecían ocupando el inmueble. Los esposos Inserni-Ortiz reclamaron a sus inquilinos, Betancourt-Buscaglia, el pago de $18,000 por cánones adeudados, más costas y honorarios de abogado, y una orden para que abandonaran la propiedad.
Los esposos Betancourt-Buscaglia presentaron oportunamente su alegación responsiva y una reconvención. Negaron las alegaciones de la demanda y adujeron, por su parte, que no habían podido disfrutar del inmueble en controversia porque tenía vicios ocultos, tales como cables eléctricos defectuosos y una bañera que no drenaba adecuadamente. En la reconvención alegaron que el defecto de la bañera había causado una caída a su hijo menor de edad, por cuyos daños reclamaron la indemnización de $250,000, distribuida entre todos los demandantes. Afirmaron los esposos Betancourt-Buscaglia que la causa directa y exclusiva del accidente sufrido por su hijo había sido la negligencia de los esposos Inserni-Ortiz, al alquilar una vivienda que no era segura y permitir la falta de mantenimiento y el deterioro de la bañera, en lugar de tomar medidas correctivas para evitar accidentes como el ocurrido. Los esposos Inserni-Ortiz replicaron a la reconvención y alegaron que los esposos Betancourt- *1054 Buscaglia no les habían notificado de desperfecto o vicio alguno de la vivienda, por lo que no pudieron prever que existía un riesgo para los inquilinos en el inmueble arrendado. Alegaron, además, que la reconvención había sido presentada con mala fe, para distraer la atención del tribunal de la verdadera controversia del caso, la falta de pago de los cánones de arrendamiento.
Posteriormente, en septiembre de 2003, los esposos Inserni-Ortiz presentaron una demanda de desahucio por la vía sumaria contra los esposos Betancourt-Buscaglia, en la Sala Superior de Guaynabo. Alegaron que los esposos Betancourt-Buscaglia continuaban ocupando el inmueble en controversia, a pesar de múltiples requerimientos de desalojo por parte de los esposos Inserni-Ortiz, y que habían incumplido con el contrato de arrendamiento al incurrir “en un patrón de repetidos atrasos en el pago de los cánones de arrendamiento”. Indicaron, además, que los esposos Betancourt-Buscaglia adeudaban, para esa fecha, un total de $5,400.
Mediante moción de 11 de diciembre de 2003, los esposos Betancourt-Buscaglia solicitaron al Tribunal de Primera Instancia, Sala Superior de Guaynabo, la consolidación de las dos causas de acción, la demanda de desahucio y la demanda por incumplimiento de contrato. El 16 de diciembre de 2003, presentaron igual solicitud en la Sala Superior de Bayamón, para que dicho foro permitiera la consolidación del caso de incumplimiento de contrato con el de desahucio, presentado ante la Sala Superior de Guaynabo.
A pesar de que la Sala Superior de Bayamón, foro donde se presentó la primera causa de acción, ordenó la consolidación de ambos casos el 23 de enero de 2004, dicha orden resultó académica, por razón de que la Sala Superior de Guaynabo ya había declarado con lugar la demanda de desahucio que se ventilaba en su sede y había decretado el desahucio de los esposos Betancourt-Buscaglia, mediante sentencia del 13 de enero de 2004, notificada el 29 de enero de 2004.
Los esposos Betancourt-Buscaglia no apelaron de la sentencia de desahucio dictada por el foro de Guaynabo. Ya final y firme la sentencia de desahucio, en abril de 2004, los esposos Inserni-Ortiz presentaron una moción ante la Sala Superior de Bayamón para solicitar que dicho tribunal dictara sentencia sumaria parcial a su favor en el caso de incumplimiento de contrato. Argumentaron que la sentencia de desahucio por la vía sumaria constituia cosa juzgada sobre la determinación relativa al incumplimiento de contrato por parte de los demandados, por lo que éstos estaban impedidos de litigar el asunto del incumplimiento por la doctrina del impedimento colateral por sentencia.
En su oposición a que se dictara sentencia sumaria, a base de que el asunto del incumplimiento ya se había resuelto en el pleito expedito de desahucio, los esposos Betancourt-Buscaglia alegaron que no procedía dictar la sentencia sumaria en el presente caso porque los esposos Inserni-Ortiz no habían incluido declaraciones juradas ni otros documentos para sustentar las alegaciones de la moción, por lo que no existía evidencia de la deuda reclamada, y porque existía controversia sobre la eficacia del contrato y la cantidad final adeudada por concepto de cánones de arrendamiento.
El 1 de septiembre de 2004, notificada el 3 de septiembre de 2004, la Sala Superior de Bayamón emitió la “sentencia parcial” —cuya finalidad discutimos más adelante — , en el caso de incumplimiento de contrato. Concluyó que la sentencia de desahucio dictada por la Sala Superior de Guaynabo se basaba en la rescisión del contrato de arrendamiento en controversia, por el incumplimiento de las obligaciones contractuales por parte de los esposos Betancourt-Buscaglia, por lo que dicha sentencia tenía el efecto de cosa juzgada —en cuanto a la inobservancia de las obligaciones contractuales — , sobre la demanda por incumplimiento de contrato. La Sala Superior de Bayamón determinó que los esposos Betancourt-Buscaglia no habían controvertido el hecho de que adeudaban los cánones de arrendamiento que se reclamaban. Por tanto, dictó sentencia sumaria parcial a favor de los esposos Inserni-Ortiz, imponiéndole a los esposos Betancourt-Buscaglia el pago de los cánones adeudados, más costas y honorarios de abogado, al aplicar la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia. De dicha sentencia es que recurren los esposos Betancourt-Buscaglia ante nos.
*1055 Los esposos Betancourt-Buscaglia argumentan que no procedía dictar la sentencia sumaria en el presente caso, porque existía controversia sobre hechos medulares. En particular, porque habían cuestionado la validez y la eficacia del contrato de arrendamiento en controversia y habían alegado vicios ocultos y defectos de construcción en la propiedad arrendada, reclamaciones que podrían anular o extinguir la relación contractual entre las partes, Isin obligación de pago de su parte. Además, alegan que, de los documentos presentados ante la Sala Superior de Bayamón, no surgía la deuda por $18,000. De acuerdo con los esposos Betancourt-Buscaglia, el inmueble había sido entregado a los esposos Insemi-Ortiz el 1 de abril de 2004, por lo que no se podían calcular e imponer cánones vencidos desde esa fecha hasta octubre de 2004, período en que el inmueble estaba bajo la posesión de los esposos Inserni-Ortiz. Añaden que, en la demanda de desahucio ventilada ante la Sala Superior de Guaynabo, sólo se habían reclamado $5,400 por concepto de cánones vencidos y que la sentencia dictada por dicho tribunal no fijó la cantidad total adeudada; por tanto, todavía habría que determinar el monto de la deuda vencida y exigible por el alegado incumplimiento.
Los esposos Insemi-Ortiz presentaron su alegato en oposición para justificar la cantidad de $18,000, la que, alegan, corresponde al pago de cánones adeudados por el período transcurrido entre el 15 de febrero de 2003, fecha en que los apelantes dejaron de pagar, hasta el 15 de octubre de 2004, fecha en que terminaba el contrato de arrendamiento pactado entre las partes; y para reafirmar el argumento de que la sentencia emitida por la Sala Superior de Guaynabo en el caso de desahucio constituyó cosa juzgada para fines de resolver el asunto del incumplimiento en el caso presentado ante la Sala Superior de Bayamón. Reiteran, además, que los esposos Betancourt-Buscaglia no cumplieron con su obligación de controvertir los hechos materiales que dieron base a la sentencia sumaria.
III
La doctrina de cosa juzgada está fundamentada en consideraciones de orden público y arraigada en el interés del Estado en poner fin a los litigios y evitar que se someta a los ciudadanos, en múltiples o repetidas ocasiones, a los rigores del proceso judicial. Pérez v. Bauzá, 83 D.P.R. 220, 225 (1961). Su propósito inmediato “es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto.” Zambrana v. Tribunal Superior, 100 D.P.R. 179, 181 (1971); Mercado Riera v. Mercado Riera, 100 D.P.R 940, 950 (1972); Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732-733 (1978); Worldwide Food Dis., Inc. v. Colón, 133 D.P.R. 827, 833-834 (1993).
Cuando se levanta defensivamente, la cosa juzgada procura la desestimación de un pleito o de una causa de acción incoada posteriormente, luego de haberse litigado el mismo asunto en un proceso judicial o administrativo anterior. En la modalidad ofensiva, sin embargo, se levanta para abreviar la solución de un litigio o de una controversia reincidente entre las mismas partes, al aplicar al segundo caso la determinación final recaída en el pleito anterior sobre la misma causa o sobre los mismos hechos. Así se ha presentado en el caso de autos, para abreviar la solución del pleito de incumplimiento de contrato, al utilizar la determinación final recaída en el caso de desahucio por la vía sumaria.
La doctrina de cosa juzgada es de estirpe civilista y tiene base estatutaria en el Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3343, donde adquiere carácter de norma sustantiva, y en el Artículo 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 1793, que le da proyección procesal y evidenciaría. Ramos González v. Félix Medina, 121 D.P.R. 312, 326 (1998); Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533, 535 (1975). 
Según dispone el Artículo 1204, para que se active la presunción de cosa juzgada en otro juicio, en cualquiera de sus modalidades, “es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron”. El propio artículo dispone que “[s]e entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por *1056 vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas31 L.P.R.A. see. 3343. La “cosa” a la cual se refiere el Artículo 1204 “responde básicamente al objeto o materia sobre la cual se ejercita la acción”. Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R., a la pág. 535.
La “causa”, por su parte, “es el motivo de pedir”. Así, el Tribunal Supremo de Puerto Rico ha señalado que la “causa”, para efectos de la defensa de cosa juzgada, “tiene un sentido que no es [el] de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes”, por lo que “podrá constituir lo primeramente resuelto cosa juzgada para el segundo pleito, cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma”. Véase Mercado Riera v. Mercado Riera, 100 D.P.R, a las págs. 951-952; A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 765 (1981); y Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R., a la pág. 536, casos en los que se adoptan las definiciones de Scaevola y Manresa, según han sido transcritas.
Algunos de los criterios que se han utilizado para determinar si hay identidad en cuanto a las causas presentadas en ambos procesos han sido: (1) si el mismo derecho ha sido infringido por la misma violación; (2) si hay una identidad tal que una sentencia diferente en la segunda acción destruiría o afectaría derechos o intereses establecidos por la primera sentencia; (3) identidad de fundamentos; y (4) si la misma evidencia sostendría ambas sentencias. Mercado Riera v. Mercado Riera, 100 D.P.R., a la pág. 951.
Por lo dicho, hay cosa juzgada cuando las causas de acción o las defensas levantadas en el segundo caso debieron o pudieron plantearse en el pleito en el que ya recayó sentencia. En este caso, como explicamos, la doctrina opera en la modalidad defensiva, conocida como fraccionamiento de la causa de acción. Se exige al litigante que exponga íntegramente su causa de acción en la primera actuación judicial contra un demandado. Si no lo hace, renuncia a las causas o remedios que no hubiera presentado. Cruz v. Ortiz, 82 D.P.R. 834, 839-840 (1961); Avellanet v. Porto Rican Express, 64 D.P.R. 693, 713 (1945).
Por otro lado, si de unos mismos hechos surgen varias causas de acción independientes o de naturaleza tan disímil que la acumulación de ellas sería inapropiada para la adecuada atención de los asuntos en litigio, no debe operar la figura, aunque el origen fáctico o temporal de los elementos que configuran dichas causas de acción sea el mismo.
Al margen de lo dicho, el Tribunal Supremo de Puerto Rico ha rechazado la aplicación automática de la doctrina de cosa juzgada a pleitos subsiguientes entre las mismas partes. Banco de la Vivienda v. Ortiz, 130 D.P.R. 730, 739 (1992). Por ello, ha adoptado como doctrina legal que cuando un tribunal se proponga hacer una determinación, a base de que la cuestión litigada constituye ya cosa juzgada, debe fundamentar su decisión “en consideraciones de orden público y de necesidad”. Incluso, ha reiterado que “la presunción de cosa juzgada tiene bien definidas excepciones en ley, y de orden equitativas”. Pérez v. Bauzá, 83 D.P.R., a la pág. 225, y Figueroa v. Municipio de San Juan, 98 D.P.R. 534, 556 (1970). Teniendo en cuenta estos principios, el Tribunal Supremo ha exceptuado la aplicación de la doctrina en múltiples circunstancias para evitar una injusticia o para atender un caso con consideraciones e implicaciones de orden público. Véase, Meléndez v. García, res. el 12 de septiembre de 2002, 158 D.P.R. _ (2002), 2002 J.T.S. 127; Parrilla v. Rodríguez y otros, res. el 12 de noviembre de 2004, 163 D.P.R._ (2004), 2004 J.T.S. 180.
En cuanto a la fase procesal en que debe hacerse el planteamiento sobre cosa juzgada, la Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 6.3, establece que dicha defensa debe ser afirmativa y, por lo tanto, es necesario que la parte que la invoca la incluya en su. alegación responsiva; de lo contrario, se entiende renunciada. En Vega Rodríguez v. Telefónica, 2002 J.T.S. 58, a la pág. 977, el Tribunal Supremo dispuso que, si la parte que se propone presentar la defensa de cosa juzgada estaba impedida originalmente de alegarla al *1057 contestar la demanda, porque dicha defensa no estaba disponible aún, porque uno de los pleitos no había terminado, entonces, dicha parte podrá levantar la defensa posteriormente, cuando se materialicen las circunstancias o elementos que la configuran. En estas circunstancias, la parte interesada en plantear la defensa —o la doctrina de manera afirmativa u ofensiva — , debe solicitar al tribunal que le permita hacer una alegación suplementaria, según lo establece la Regla 13.4 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 13.4, en la primera oportunidad que tuviera para ello.
Los artículos 1444 a 1464 del Código Civil, 31 L.P.R.A. sees. 4051-4071, regulan las obligaciones recíprocas que genera el tipo de contrato de arrendamiento que existía entre los litigantes del caso de autos, salvadas las exclusiones que pudieran adoptar válidamente en el acuerdo. El arrendatario está obligado, entre otras cosas, “[a] pagar el precio del arrendamiento en los términos convenidos, Art. 1445 del Código Civil, 31 L.P.R.A. see. 4052. Tal incumplimiento es causa de desahucio, según provisto en el apartado 2 del Artículo 1459, 31 L.P.R.A. sec. 4066. Igual sanción recogen los artículos 628 y 631 del Código de Enjuiciamiento Civil, ed. 1933, según enmendados, 32 L.P.R.A. sees. 2829 y 2832. Se ha reconocido la procedencia del desahucio por la vía sumaria en las acciones fundadas bajo cualquiera de estos cuerpos legales. Flores v. Flores Toledo, 101 D.P.R. 61, 67 (1983).
El arrendador, en lo que es pertinente al caso de autos, está obligado “[a] hacer [en la cosa] durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada”. Art. 1444 del Código Civil, 31 L.P.R.A. see. 4051. Si los contratantes no cumplieren con las obligaciones pactadas expresamente o con las impuestas por la ley, “podrán pedir las rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente”. Art. 1446 del Código Civil, 31 L.P.R.A. see. 4053.
El Artículo 1458 amplía expresamente las causas de acción por el incumplimiento del contrato de arrendamiento. Así provee que “[s]i se pierde la cosa arrendada o alguno de los contratantes falta al cumplimiento de lo estipulado, se observará respectivamente lo dispuesto en los artículos 1136 y 1137 y en los artículos 1054 y 1077". Estas disposiciones de ley cubren desde la pérdida de la cosa arrendada hasta la acción en daños de naturaleza contractual. Double AA Properties Corp. v. Sec. de Justicia, 109 D.P.R. 235 (1979); Cabinero v. Cobián Theaters, 81 D.P.R. 960 (1960). Incluso, se ha extendido la gama de. acciones a las generadas bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, si concurren los criterios para la reclamación de daños y perjuicios de naturaleza extracontractual. Ramos Lozada v. Orientalist Rattan, 130 D.P.R. 712 (1992).
La Regla 36 de Procedimiento Civil permite y regula los criterios para la adjudicación sumaria de una controversia, previa solicitud de parte. 32 L.P.R.A. Ap. Ill, R. 36. La Regla 36.2 de Procedimiento Civil, 32 L.P. R.A. Ap. III, R. 36.2, específicamente permite a un demandado presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Su propósito principal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales y que, por ello, no requieren la celebración de un juicio plenario. Ello implica que en el proceso sólo resta dirimir una o varias controversias de derecho. Vera Morales v. Bravo Colón, res. el 27 de febrero de 2004, 161 D.P.R._, 2004 J.T.S. 40, a las págs. 744-747.
Si se usa apropiadamente, la sentencia sumaria contribuye a descongestionar los calendarios judiciales. Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867, 873 (1992); Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115, 133 (1992). Sin embargo, para considerar este modo abreviado de dictar sentencia, el tribunal sentenciador debe concluir, luego de examinar los documentos que constituyen el expediente del caso, “que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.” *1058 Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986); Roth v. Lugo, 87 D.P.R. 386, 397 (1963). Por tanto, la parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar la inexistencia de una controversia real sobre todo hecho pertinente y esencial y que, a la luz del derecho sustantivo, procede dictar sentencia a su favor. Íd.; Hurtado v. Osuna, 138 D.P.R. 801, 809 (1995), y Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987). Para oponerse a la solicitud de sentencia sumaria, la parte contraria deberá presentar documentos y declaraciones juradas que demuestren que hay controversia real sobre los hechos pertinentes y esenciales que el solicitante presenta como indubitados. La ausencia de tal prueba, sin embargo, no conlleva la concesión de la sentencia sumaria a favor del solicitante. Vera Morales v. Bravo Colón, 2004 J.T.S. 40, a la pág. 749; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 912-913 (1994); Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R., a la pág. 133.
Reiteradamente, el Tribunal Supremo ha requerido a los foros de primera instancia prudencia y mesura en el uso de ese apremio procesal. “Ai dictar sentencia sumaria, el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (I) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede”. Vera Morales v. Bravo Colón, 2004 J.T.S. 40, a la pág. 750. Toda duda en cuanto a la existencia de una controversia real sobre hechos debe resolverse en contra de la parte que solicita la adjudicación sumaria. La política pública que sostiene este principio de excepción es que no se ponga en peligro o se lesionen los intereses de ninguna de las partes. Philip Morris, Inc. v. Tribunal Superior, 103 D.P.R. 207, 216 (1975).
Como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea tenemos dos limitaciones: primero, sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, segundo, sólo podemos determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos materiales y esenciales en disputa le corresponde al foro de primera instancia. Vera Morales v. Bravo Colón, 2004 J.T.S. 40, a la pág. 746, que hace referencia a 10A Wright, Miller & Kane, Federal Practice and Procedure 3d, Sec. 2716, págs. 273-286 (1998).
IV
Ante la diversidad de acciones, dos demandas y una reconvención que las partes del caso de autos han protagonizado en dos salas distintas, no procedía aplicar la doctrina de cosa juzgada, en ninguna de sus modalidades, ni la adjudicación sumaria de la controversia sobre la cantidad adeudada por concepto de cánones de arrendamiento que fuera reclamada en el primer pleito, por los siguientes fundamentos.
A tenor de las fuentes legales descritas, si el arrendatario no cumplió con su obligación de pago, podía el arrendador demandar las sanciones correspondientes, desde el desahucio hasta la indemnización económica que procediera por la violación del acuerdo. De igual manera, si el arrendador no cumplió con sus obligaciones contractuales o estatutarias, el arrendatario tenía disponibles las causas de acción que emanan de los artículos descritos, tanto en el ámbito contractual como en el extracontractual.
Con independencia de los elementos que configuran cada causa de acción incoada contra los demandados y peticionarios, Betancourt y Buscaglia, no puede la parte demandante y recurrida, Inserni-Ortiz, reclamar la aplicación a su favor de la doctrina de cosa juzgada para abreviar la solución del caso de incumplimiento de contrato, cuando propició ella misma, con la presentación del segundo caso de desahucio, el fraccionamiento de su reclamación frente a los peticionarios. En la primera demanda reclamó a los arrendatarios varios de los *1059 remedios que permitía la ley y el contrato, desde el pago de los cánones adeudados, la indemnización correspondiente por su incumplimiento de pago y el desahucio. En ese primer pleito debieron ventilarse todas las causas de acción. Incluso, pudo obtener el desalojo por la cuantía adeudada y no cuestionada por los demandados en ese momento. No fue así; de ahí surgen las complejidades procesales que traen los peticionarios ante nos.
La estrategia procesal de fraccionar la causa de desahucio y lograr su solución por la vía sumaria, en un foro distinto, no puede premiarse con la dispensa de ventilar en el caso ordinario todas las causas de acción coincidentes en el pleito, sobre todo, las defensas y alegaciones que han interpuesto los demandados Betancourt y Buscaglia y que pueden incidir, precisamente, en el monto total adeudado a los Inserni-Ortiz por concepto de cánones.
En segundo lugar, tampoco es justa tal aplicación de la figura de cosa juzgada cuando los demandados y peticionarios, —al verse enfrentados a una doble litigación en flancos distintos, generada por los mismos hechos o alegaciones — , solicitaron la consolidación de ambos pleitos, para litigar en un sólo foro y en una misma instancia las diversas causas de acción incoadas contra ellos y la que ellos incoaron contra los demandantes. Ese remedio, la consolidación, le fue concedido por el foro judicial que atendió la primera causa y al que le correspondía, según la mejor práctica judicial, resolverlas todas, pero su determinación coincidió cronológicamente con la expedita solución del caso de desahucio y se tornó académica. No hubo subterfugio de su parte para evadir la lid en cualquiera de sus frentes.
En tercer lugar, la sentencia de desahucio se limitó a declarar con lugar la demanda y a ordenar el desalojo por la deuda acumulada. El escueto dictamen dispuso:

“La vista, de la segunda comparecencia en el presente caso fue celebrada el día 8 de enero de 2004. Compareció la parte demandante representada por el Ledo. Rubén T. Nigaglioni. La parte demandada compareció por conducto del Ledo. Jorge González González.

El Tribunal dicta Sentencia declarando con lugar la demanda y en su consecuencia decreta el desahucio, disponiéndose que de la parte demandada no desalojar la propiedad en el término de ley de cuarenta (40) días, una vez la Sentencia sea firme, se procederá a su lanzamiento por la vía judicial, previa solicitud de parte.

Se condena a la parte demandada el pago de las costas sin especial imposición de honorarios de abogado.

Regístrese y notifíquese.

En Guaynabo, Puerto Rico a 13 de enero de 2004.

(Fdo.) Héctor Cordero Vázquez, Juez Superior”

Como vemos, no constituye esa sentencia una carta en blanco para imponer o cobrar de los demandados cualquier cantidad que tuvieron a bien reclamar los demandantes en otro pleito, aunque la deuda surgiera del incumplimiento de otras cláusulas contractuales. En todo caso, la reclamación quedaría limitada, como alegan los apelantes, a la cantidad reclamada en la demanda de desahucio por la vía sumaria ($5,400), cantidad que es distinta a la reclamada en la primera demanda ($18,000). Incluso, los peticionarios reconocen que la sentencia del desahucio sumario pudo afectar la cantidad reclamada en esa demanda, pero no el exceso imputable al incumplimiento del contrato hasta la fecha de su extinción.
Aunque se admitiera el hecho de la falta de pago hasta la cantidad de $5,400, cosa que los demandados no *1060 niegan, tenían los demandantes que demostrar que la conducta de incumplimiento que justificó el desahucio por la vía sumaria (tenían acumulada una deuda de $5,400 en cánones vencidos), es la misma conducta de incumplimiento que justifica las otras reclamaciones de la primera demanda (abandono de la propiedad antes del plazo de vencimiento, más daños y perjuicios por la violación de contrato), o demostrar mediante documentos fehacientes o declaraciones juradas que la cantidad total reclamada ($18,000) era líquida y exigible. Sólo así se daría la total identidad de causas o razón de pedir que justificaría la aplicación, en condiciones ordinarias, de la doctrina de cosa juzgada. El expediente refleja que la determinación judicial recurrida fue emitida sin haberse hecho dicha demostración.
Además, respecto a la solicitud de sentencia sumaria, hay varias controversias de hechos y de derecho, surgidas de la concatenación de causas y reclamaciones mutuas, que hacían inapropiada la adjudicación sumaria. Ya hemos adelantado la controversia que rodea la cuantía de $18,000 reclamada por los demandados. En este caso también existe una reconvención en la que los demandados reclaman indemnización a los demandantes-arrendadores por incumplimiento de su obligación contractual de garantizar el disfrute adecuado de la cosa arrendada. Nótese que, una vez surge la reconvención, ambas causas, la demanda original y la reconvención, conforman la totalidad del caso y deben ser consideradas por el tribunal en su justa proyección e integridad al momento de sopesar los méritos de la solicitud de sentencia sumaria. Ante este cuadro sustantivo y procesal, nunca debió el foro recurrido resolver la controversia sobre el alegado incumplimiento del contrato de arrendamiento por la vía sumaria ni por la aplicación de la doctrina de cosa juzgada.
Por los fundamentos expuestos, se expide el auto de certiorari, se revoca la resolución, mal denominada sentencia parcial, de 1 de septiembre de 2004, y se ordena la continuación de los procedimientos de conformidad con lo aquí expresado.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 45
1.Esta regla dispone, en la parte pertinente:
"Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que se ordene expresamente que se registre la sentencia. ” (Enfasis nuestro.)
2. La Regla 84 (B) de Evidencia, 1979, dispuso que el Art. 421 del Código de Enjuiciamiento Civil, ed. 1933, quedara vigente provisionalmente hasta que fuera modificado, reubicado en otra ley o derogado.
3. Ver Republic Sec. Corp. v. Puerto Rico Aqueduct, etc., 674 F.2d 952, 955-956 n. 4 (1er Cir. 1982), que cuestiona la norma sentada en este caso.
4. Estas disposiciones no forman parte de la Ley de Procedimientos Legales Especiales de 1979.
5. No pueden los demandados-arrendatarios levantar tal alegación como defensa porque renunciaron a ella, ya que solicitaron la consolidación de los pleitos e hicieron depender su propia reclamación de los eventos que generaron el caso de incumplimiento de contrato. Notamos que la reclamación contra los arrendadores se da vía reconvención, no por medio de una acción independiente. Los arrendatarios nunca levantaron como defensa afirmativa que la causa del desahucio debió ventilarse en el pleito sobre el incumplimiento, que fue el que se inició primero. Acudieron a las vistas a solicitar la *1061 consolidación, no la desestimación por la modalidad del fraccionamiento, porque aún se estaba ventilando el primer caso, y “cosa juzgada no es cosa juzgándose”. Díez v. Guzmán, 108 D.P.R. 371, 379 (1979). Al acudir a la segunda comparecencia del procedimiento sumario, aceptaron la continuación fragmentada del asunto, con las consecuencias que ya hemos reseñado. Pero ello no da a base a reclamarles más de lo que esa sentencia les condena a pagar.
6. Por esta razón es que el caso de Worldwide Food Dis., Inc. v. Colón, 133 D.P.R. 827 (1993), —en el que los recurridos basan su oposición al recurso — , no es aplicable al caso de autos. Allí, la sentencia de desahucio concluyó que: “El incumplimiento repetido por Worldwide de sus obligaciones contractuales dio lugar a que Colón dejara sin efecto la promesa de venta y a que quedara sin efecto la opción a la prórroga contractual.” Esa conclusión era la base del pleito al que se aplicó la doctrina. En el caso de autos, la sentencia de desahucio no tiene determinaciones de hechos o derecho dirigidas a dirimir las controversias o las bases de la causa de acción del primer pleito.